**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**Civil No. 5:10-CV-_____**

| | | |
|---|---|---|
| STEVEN WAYNE THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GERALD BRANKER in his OFFICIAL | ) | |
| capacity as Administrator for Central Prison, | ) | |
| North Carolina Department of Correction; | ) | |
| NORTH CAROLINA DEPARTMENT OF | ) | |
| CORRECTION; JOHN DOE 1 in his | ) | |
| OFFICIAL Capacity as a Corrections Officer | ) | |
| for the NORTH CAROLINA DEPARTMENT | ) | |
| OF CORRECTION and INDIVIDUALLY; | ) | |
| JOHN DOE 2 in his OFFICIAL Capacity as a | ) | |
| Corrections Officer for the NORTH | ) | |
| CAROLINA DEPARTMENT OF | ) | |
| CORRECTION and INDIVIDUALLY; JOHN | ) | |
| DOE 3 in his OFFICIAL Capacity as a | ) | |
| Corrections Officer for the NORTH | ) | **CIVIL COMPLAINT** |
| CAROLINA DEPARTMENT OF | ) | |
| CORRECTION and INDIVIDUALLY; JOHN | ) | |
| DOE 4 in his OFFICIAL Capacity as a | ) | |
| Corrections Officer for the NORTH | ) | |
| CAROLINA DEPARTMENT OF | ) | |
| CORRECTION and INDIVIDUALLY; NURSE | ) | |
| DOE in her OFFICIAL capacity as a Nurse for | ) | |
| Central Prison, NORTH CAROLINA | ) | |
| DEPARTMENT OF CORRECTION and | ) | |
| INDIVIDUALLY; LEE COUNTY, NORTH | ) | |
| CAROLINA; LEE COUNTY SHERIFF'S | ) | |
| DEPARTMENT; TRACY CARTER in his | ) | |
| official capacity as Lee County Sheriff and | ) | |
| INDIVIDUALLY; JUSTIN MATTHEWS in | ) | |
| his OFFICIAL Capacity as a Lee County | ) | |
| Deputy Sheriff and INDIVIDUALLY; KEN | ) | |
| GILSTRAP in his OFFICIAL Capacity as a Lee | ) | |
| County Deputy Sheriff and INDIVIDUALLY; | ) | |
| | ) | |
| Defendants. | ) | |

|  |  |  |
|---|---|---|
| STEVEN WAYNE THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CLINT BABB in his OFFICIAL Capacity as a Lee | ) | |
| County Deputy Sheriff and INDIVIDUALLY; | ) | |
| R.V. HOLLY in his OFFICIAL Capacity as a Lee | ) | |
| County Deputy Sheriff and INDIVIDUALLY;C.B. | ) | |
| ESTES in his OFFICIAL Capacity as a Lee | ) | |
| County Deputy Sheriff and INDIVIDUALLY; | ) | |
| PABLO MORA in his OFFICIAL Capacity as a | ) | |
| Lee County Deputy Sheriff and INDIVIDUALLY; | ) | |
| BILL MARCUM, in his OFFICIAL Capacity as a | ) | |
| Lee County Deputy Sheriff and INDIVIDUALLY; | ) | |
| DARIN SMITH in his OFFICIAL Capacity as a | ) | |
| Lee County Deputy Sheriff and INDIVIDUALLY; | ) | |
| MARK MELTON in his OFFICIAL Capacity as a | ) | |
| Lee County Deputy Sheriff and INDIVIDUALLY; | ) | **CIVIL COMPLAINT (Cont.)** |
| M.D. SMITH in his OFFICIAL Capacity as a Lee | ) | |
| County Deputy Sheriff and INDIVIDUALLY; | ) | |
| BRYAN ALLEN in his OFFICIAL Capacity as a | ) | |
| Lee County Deputy Sheriff and INDIVIDUALLY; | ) | |
| DON LLOYD in his OFFICIAL Capacity as a Lee | ) | |
| County Deputy Sheriff and INDIVIDUALLY; | ) | |
| JOHN DOE 5 in his OFFICIAL capacity as a Lee | ) | |
| County Deputy Sheriff and INDIVIDUALLY; | ) | |
| JOHN DOE 6 in his OFFICIAL capacity as a Lee | ) | |
| County Deputy Sheriff and INDIVIDUALLY; | ) | |
| JOHN DOE 7 in his OFFICIAL capacity as a Lee | ) | |
| County Deputy Sheriff and INDIVIDUALLY; | ) | |
| JOHN DOE 8 in his OFFICIAL capacity as a Lee | ) | |
| County Deputy Sheriff and INDIVIDUALLY; | ) | |
| JOHN DOE 9 in his OFFICIAL capacity as a Lee | ) | |
| County Deputy Sheriff and INDIVIDUALLY; | ) | |
| JOHN DOE 10 in his OFFICIAL capacity as a Lee | ) | |
| County Deputy Sheriff and INDIVIDUALLY; | ) | |
| JOHN DOE 11 in his OFFICIAL capacity as a Lee | ) | |
| County Deputy Sheriff and INDIVIDUALLY; | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| STEVEN WAYNE THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE 12 in his OFFICIAL capacity as a Lee County Deputy Sheriff and INDIVIDUALLY; JOHN DOE 13 in his OFFICIAL capacity as a Lee County Deputy Sheriff and INDIVIDUALLY; JOHN DOE 14 in his OFFICIAL capacity as a Lee County Deputy Sheriff and INDIVIDUALLY; JOHN DOE 15 in his OFFICIAL capacity as a Lee County Deputy Sheriff and INDIVIDUALLY; DEFENDANTS YET TO BE IDENTIFIED in their OFFFICIAL Capacities as a Lee County Deputy Sheriffs and INDIVIDUALLY; | ) ) ) ) ) ) ) ) ) ) ) ) | **CIVIL COMPLAINT (Cont.)** |
| Defendants. | | |

**COMES NOW** Steven Wayne Thomas ("Thomas"), by and through the undersigned counsel, and complaining of the acts of the Defendants alleges and states as follows:

## Introduction

Steven Wayne Thomas and his family are lifelong residents and farmers in Lee County. Thomas has no previous criminal record and is well known in and about Lee County. In particular, Thomas is well known to most of the Defendant employees of the Lee County Sheriff's Department. In this action Thomas seeks compensatory and punitive damages as well as other relief pursuant to 42 U.S.C. § 1983, the Fourth, and Fourteenth Amendments to the United States Constitution, Article I §§ 18 and 19 of the North Carolina Constitution, and North Carolina law, for the unconstitutional and unlawful conduct of the Defendants. The actions of

the Defendants as detailed herein deprived Thomas of his civil rights and constitute egregious, excessive and objectively unreasonable use of force under the Fourth and Fourteenth Amendments to the United States Constitution, Article I §§ 18 and 19 of the North Carolina Constitution. While numerous Defendants simply stood by and watched Thomas as he was pinned to the ground, immobile, face down and prone, was beaten and tased mercilessly by no less than five Lee County Sheriffs Deputies. In a span of just over thirty minutes as Defendants brutally beat and assaulted Thomas, he was tased at least 11 times in less than fifteen minutes, repeatedly pummeled with fists, pepper sprayed, and kneed in the face multiple times, resulting in a fractured jaw. Damage to Thomas' jaw was such that it required surgery to repair. Once in custody, Thomas was the victim of numerous violations of his civil rights at the hands of the Lee County Sheriff's Department, and the State of North Carolina, including, among other things:

a.      Never being advised of his Constitutional Rights;

b.      Denial of a phone call or any communication with family despite his bail having been set;

c.      Denial of the opportunity to make bail despite having bail set the day Thomas was brutalized by the Lee County Sheriff's Department and hospitalized;

d.      Denial of prescribed medical care through the wanton discard of a brace required to immobilize Thomas' fractured jaw and denial of prescribed pain medication by North Carolina Department of Corrections personnel;

e.      Never being informed he was allowed to call a third party to bail him out;

f.      Upon "release" from custody, and in an attempt to obtain incriminating statements without his consent or knowledge, being secretly recorded via an audio recorder at the Lee County Sheriff's Department; and

g.        Upon "release" from custody, and in continued attempt to obtain incriminating statements without his consent or knowledge, being secretly videotaped as he changed clothes in a Lee County Sheriff's Department interrogation room.

## PARTIES

2.        Steven Wayne Thomas is a 35 year old citizen of the United States residing at 446 Castleberry Road, Lee County, Sanford, North Carolina 27332. Thomas has never been convicted of any crime.

3.        Defendant North Carolina Department of Corrections is a Department of the State of North Carolina, organized and existing pursuant to the Constitution and laws of the State of North Carolina. Upon information and belief the Department of Correction reposed decision making authority regarding medical treatment of prisoners with its medical employees.

4.        Regarding Thomas' state claims, Defendant North Carolina Department of Corrections is sued under the doctrine of *Respondeat Superior*, as individual Defendants were acting in the course and scope of their official duties as Corrections Officers and/or Medical employees in the employ of the North Carolina Department of Corrections and as agents thereof while engaged in the actions alleged herein.

5.        Defendant Gerald Branker ("Branker") is, and was at all times relevant hereto, the Administrator for Central Prison; North Carolina Department of Corrections. At all times relevant hereto, Branker was acting in the course and scope of his official duties as the Administrator of Central Prison for the North Carolina Department of Corrections and under the color of state law. Upon information and belief Branker is a citizen and resident of Wake County, North Carolina

and under no legal disability.  Branker is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

6.      Upon information and belief, Defendant John Doe 1 ("John Doe 1") is, and was at all times relevant hereto, a corrections officer in the employment of the North Carolina Department of Corrections.  The true name of John Doe 1 is unknown to Thomas at this time.  At all times relevant hereto, John Doe 1 was acting in the course and scope of his official duties as a corrections officer for the North Carolina Department of Corrections and under the color of state law.  Upon information and belief John Doe 1 is an adult citizen and resident of North Carolina under no legal disability.  John Doe 1 is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

7.      Upon information and belief, Defendant John Doe 2 ("John Doe 2") is, and was at all times relevant hereto, a corrections officer in the employment of the North Carolina Department of Corrections.  The true name of John Doe 2 is unknown to Thomas at this time.  At all times relevant hereto, John Doe 2 was acting in the course and scope of his official duties as a corrections officer for the North Carolina Department of Corrections and under the color of state law.  Upon information and belief John Doe 2 is an adult citizen and resident of North Carolina under no legal disability.  John Doe 2 is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

8.      Upon information and belief, Defendant John Doe 3 ("John Doe 3") is, and was at all times relevant hereto, a corrections officer in the employment of the North Carolina Department of Corrections.  The true name of John Doe 3 is unknown to Thomas at this time.    At all times relevant hereto, John Doe 3 was acting in the course and scope of his official duties as a corrections officer for the North Carolina Department of Corrections and under the color of state law.  Upon information and belief John Doe 3 is an adult citizen and resident of North Carolina under no

legal disability. John Doe 3 is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

9.      Upon information and belief, Defendant John Doe 4 ("John Doe 4") is, and was at all times relevant hereto, a corrections officer in the employment of the North Carolina Department of Corrections. The true name of John Doe 4 is unknown to Thomas at this time. At all times relevant hereto, John Doe 4 was acting in the course and scope of his official duties as a corrections officer for the North Carolina Department of Corrections and under the color of state law. Upon information and belief John Doe 4 is an adult citizen and resident of North Carolina under no legal disability. Defendant John Doe 4 is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

10.      Defendant Nurse Doe ("Nurse Doe") is, and was at all times relevant hereto, a nurse in the employment of Central Prison; North Carolina Department of Corrections. The true name of Nurse Doe is unknown to Thomas at this time. At all times relevant hereto, Nurse Doe was acting in the course and scope of her official duties as a nurse for Central Prison for the North Carolina Department of Corrections and under the color of state law. Upon information and belief Nurse Doe is an adult citizen and resident of North Carolina under no legal disability. Nurse Doe is sued in her individual capacity under 42 U.S.C. § 1983, and in her individual and official capacities under North Carolina Law.

11.      Defendant Lee County ("Lee County") is a political and corporate body created by the North Carolina General Assembly's passage of a bill of creation in 1907. Upon information and belief, Lee County reposed in its Sheriff's Department, Sheriff, and Deputies employed by the Sheriff's Department final policymaking authority with respect to the use of force by deputies employed with the Sheriff's Department.

12.     Defendant Lee County Sheriff's Department is a duly authorized and established department of Defendant Lee County.  Upon information and belief, Lee County reposed in the Lee County Sheriff's Department, its Sheriff, and Deputies employed by same, final policymaking authority with respect to the use of force by deputies employed with the Sheriff's Department.

13.     Defendant Sheriff Tracy Carter ("Sheriff Carter") is, and was at all times relevant hereto, the Sheriff of Lee County, North Carolina, and is named as a defendant in both his individual and official capacities.  At all times relevant hereto Sheriff Carter was acting in the course and scope of his official duties as the Sheriff of Lee County and under the color of state law.  Upon information and belief Sheriff Carter is an adult citizen and resident of Lee County, North Carolina under no legal disability.  Sheriff Carter was on duty and observed the arrest and apprehension of Thomas.  Sheriff Carter is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

14.     Defendant Justin Matthews ("Deputy Matthews") is, and was at all times relevant hereto, an Officer with the Lee County Sheriff's Department.  At all times relevant hereto Deputy Matthews was acting in the course and scope of his official duties as a Sheriff's Deputy for Lee County and under the color of state law.  Upon information and belief Deputy Matthews is an adult citizen and resident of Lee County, North Carolina under no legal disability.  Deputy Matthews was on duty and participated in and/or observed the arrest and apprehension of Thomas.  Deputy Matthews is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

15.     Defendant Ken Gilstrap ("Deputy Gilstrap") is, and was at all times relevant hereto, an Officer with the Lee County Sheriff's Department.  At all times relevant hereto

Deputy Gilstrap was acting in the course and scope of his official duties as a Sheriff's Deputy for Lee County and under the color of state law. Upon information and belief Deputy Gilstrap is an adult citizen and resident of Lee County, North Carolina under no legal disability. Deputy Gilstrap was on duty and participated in and/or observed the arrest and apprehension of Thomas. Deputy Gilstrap is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

16.      Defendant C.B. Estes ("Deputy Estes") is, and was at all times relevant hereto, an Officer with the Lee County Sheriff's Department. At all times relevant hereto, Deputy Estes was acting in the course and scope of his official duties as a Sheriff's Deputy for Lee County and under the color of state law. Upon information and belief Deputy Estes is an adult citizen and resident of Lee County, North Carolina under no legal disability. Deputy Estes was on duty and participated in and/or observed the arrest and apprehension of Thomas. Deputy Estes is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

17.      Defendant Clint Babb ("Deputy Babb") is, and was at all times relevant hereto, an Officer with the Lee County Sheriff's Department. At all times relevant hereto, Deputy Babb was acting in the course and scope of his official duties as a Sheriff's Deputy for Lee County and under the color of state law. Upon information and belief Deputy Babb is an adult citizen and resident of Lee County, North Carolina under no legal disability. Deputy Babb was on duty and participated in and/or observed the arrest and apprehension of Thomas. Deputy Babb is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

18.     Defendant R.V. Holly ("Deputy Holly") is, and was at all times relevant hereto, an Officer with the Lee County Sheriff's Department.  At all times relevant hereto, Deputy Holly was acting in the course and scope of his official duties as a Sheriff's Deputy for Lee County and under the color of state law.  Upon information and belief Deputy Holly is an adult citizen and resident of Lee County, North Carolina under no legal disability.  Deputy Holly was on duty and participated in and/or observed the arrest and apprehension of Thomas.  Deputy Holly is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

19.     Defendant Pablo Mora ("Deputy Mora") is, and was at all times relevant hereto, an Officer with the Lee County Sheriff's Department.  At all times relevant hereto, Deputy Mora was acting in the course and scope of his official duties as a Sheriff's Deputy for Lee County and under the color of state law.  Upon information and belief Deputy Mora is an adult citizen and resident of Lee County, North Carolina under no legal disability.  Deputy Mora was on duty and participated in and/or observed the arrest and apprehension of Thomas.  Deputy Mora is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

20.     Defendant Bill Marcum ("Deputy Marcum") is, and was at all times relevant hereto, an Officer with the Lee County Sheriff's Department.  At all times relevant hereto, Deputy Marcum was acting in the course and scope of his official duties as a Sheriff's Deputy for Lee County and under the color of state law.  Upon information and belief Deputy Marcum is an adult citizen and resident of Lee County, North Carolina under no legal disability.  Deputy Marcum was on duty and participated in and/or observed the arrest and apprehension of Thomas.

Deputy Marcum is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

21.     Defendant Darin Smith ("Deputy D. Smith") is, and was at all times relevant hereto, an Officer with the Lee County Sheriff's Department.  At all times relevant hereto, Deputy D. Smith was acting in the course and scope of his official duties as a Sheriff's Deputy for Lee County and under the color of state law.  Upon information and belief Deputy D. Smith is an adult citizen and resident of Lee County, North Carolina under no legal disability.  Deputy D. Smith was on duty and participated in and/or observed the arrest and apprehension of Thomas.  Deputy D. Smith is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

22.     Defendant Mark Melton ("Deputy Melton") is, and was at all times relevant hereto, an Officer with the Lee County Sheriff's Department.  At all times relevant hereto, Deputy Melton was acting in the course and scope of his official duties as a Sheriff's Deputy for Lee County and under the color of state law.  Upon information and belief Deputy Melton is an adult citizen and resident of Lee County, North Carolina under no legal disability.  Deputy Melton was on duty and participated in and/or observed the arrest and apprehension of Thomas. Deputy Melton is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

23.     Defendant M.D. Smith ("Deputy M.D. Smith") is, and was at all times relevant hereto, an Officer with the Lee County Sheriff's Department.  At all times relevant hereto, Deputy M.D. Smith was acting in the course and scope of his official duties as a Sheriff's Deputy for Lee County and under the color of state law.  Upon information and belief Deputy M.D. Smith is an adult citizen and resident of Lee County, North Carolina under no legal

disability. Deputy M.D. Smith was on duty and participated in and/or observed the arrest and apprehension of Thomas. Deputy M.D. Smith is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

24.     Defendant Bryan Allen ("Deputy Allen") is, and was at all times relevant hereto, an Officer with the Lee County Sheriff's Department. At all times relevant hereto, Deputy Allen was acting in the course and scope of his official duties as a Sheriff's Deputy for Lee County and under the color of state law. Upon information and belief Deputy Allen is an adult citizen and resident of Lee County, North Carolina under no legal disability. Deputy Allen was on duty and participated in and/or observed the arrest and apprehension of Thomas. Deputy Allen is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

25.     Defendant Don Lloyd ("Deputy Lloyd") is, and was at all times relevant hereto, an Officer with the Lee County Sheriff's Department. At all times relevant hereto, Deputy Lloyd was acting in the course and scope of his official duties as a Sheriff's Deputy for Lee County and under the color of state law. Upon information and belief Deputy Lloyd is an adult citizen and resident of Lee County, North Carolina under no legal disability. Deputy Lloyd was on duty and participated in and/or observed the arrest and apprehension of Thomas. Deputy Lloyd is sued in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacities under North Carolina Law.

26.     Defendants Deputies John Doe 5 through 15 ("Deputies John Doe 5 – 15") were, and at all times relevant hereto, were Officers with the Lee County Sheriff's Department. At all times relevant hereto, Deputies John Doe 5 through 15 were acting in the course and scope of their official duties as Sheriff's Deputies for Lee County and under the color of state law. Upon

information and belief Deputies John Doe 5 through 15 are adult citizens and residents of Lee County, North Carolina under no legal disability. Deputies John Doe 5 – 15 were on duty and participated in and/or observed the arrest and apprehension of Thomas. Deputies John Doe 5 through 15 are sued in their individual capacity under 42 U.S.C. § 1983, and in their individual and official capacities under North Carolina Law.

27. Defendants yet to be identified were, at all times relevant hereto, Officers with the Lee County Sheriff's Department. The Defendants yet to be identified were acting in the course and scope of their official duties as Sheriffs Deputies for Lee County and under the color of state law. Upon information and belief Defendants John yet to be identified are citizens and residents of Lee County, North Carolina. The Defendants yet to be identified were on duty and participated in and/or observed the arrest and apprehension of Thomas. The Defendants yet to be identified are sued in their individual capacities under 42 U.S.C. § 1983, and in their individual and official capacities under North Carolina Law.

28. As officers of the Lee County Sheriff's Department, Sheriff Carter, and each individual Deputy named herein, Deputies John Doe 5 -15, and Defendants yet to be named, are and were at all times relevant to the actions detailed herein, responsible for executing the official, policies, decisions, and procedures of the Lee County Sheriff's Department, and thereby of Lee County, and were part of a pattern and practice of violation of citizens' constitutional rights.

29. Lee County is sued under 42 U.S.C. § 1983, for engaging in a pattern and practice of allowing its Sheriff's Deputies to use excessive force and for failing to properly train the Deputies of the Lee County Sheriff's Department in the use of force.

30. Regarding Thomas' state claims, Lee County is sued under the doctrine of *Respondeat Superior*, as all individual Defendants were acting in the course and scope their

official duties as the Sheriff and Sheriff's Deputies in the employ of Lee County and as agents thereof when engaged in the actions alleged herein.

31.     Upon information and belief, at all times relevant to the allegations herein, North Carolina County Department of Corrections was authorized to, and did, waive its immunity from civil liability in tort by purchasing liability insurance, either by contract with an insurance company or by participation in an insurance risk pool that covers the claims raised in this action.

32.     At all times relevant to the allegations herein, Lee County and the Lee County Sheriff's Department were authorized to, and did, waive immunity from civil liability in tort by purchasing liability insurance, either by contract with an insurance company or by participation in an insurance risk pool that covers the claims raised in this action.

33.     At all times the actions and practices of the Defendants named herein and those acting at their direction, were performed under the color of state law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution

## JURISDICTION AND VENUE

34.     The above and all other allegations herein are incorporated by reference as if fully set forth.

35.     This case presents an actual case and controversy arising under the Fourth and Fourteenth Amendments to the United States Constitution and asserts claims for relief under of 42 U.S.C. §§ 1983 and 1988, as well as claims for relief under Article I  §§  18 and 19 of the North Carolina Constitution, and North Carolina State Law.

36.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1343(a) in that this action is to redress depravation by the Defendants, under the color of state laws of the rights of

privileges and immunities granted Plaintiff by the United States Constitution. Jurisdiction is further proper in this Court pursuant to 28. U.S.C. §§ 1331 and 1443.

37.    This Court has pendant and/or supplemental jurisdiction over Plaintiff's state-law claims pursuant 28 U.S.C. § 1367.

38.    Venue is proper in this District under 28 U.S.C. § 1391 in that one or more of the Defendants reside in Wake County, North Carolina, and a substantial part of the claims asserted herein arose in this District.

39.    Upon information and belief, to the extent the doctrines of sovereign, governmental, or other immunities apply to the claims stated herein, Defendants either directly or through their respective employers, have waived sovereign, governmental, or other immunity through the purchase of one or more policies of liability insurance pursuant to N.C. Gen. Stat. §153A-435, by purchasing a bond pursuant to N.C. Gen. Stat §162-8, by participating in a local government risk pool pursuant to N.C. Gen. Stat. §58-23-5, by settling similar actions or claims, or otherwise.

## FACTUAL ALLEGATIONS

### Thomas Becomes Distraught.

40.    The above and all other allegations herein are incorporated by reference as if fully set forth.

41.    In the early morning of April 27, 2009, Thomas had been working on his Farm spraying tobacco fields with a mixture of Command 3ME and Spartan 4F chemicals to assist with grass and weed control.

42.    After working in the morning, Thomas returned to his shop around noon for lunch. Thomas finished his lunch and returned to work in the fields continuing to mix chemicals.

43.     During the course of mixing chemicals Thomas became increasingly disoriented and could not remember the proper mixing ratio for the chemicals.  Thomas became anxious and began pacing and broke into a cold sweat.

44.     During the time Thomas was anxious and pacing, Thomas' friend since childhood, Joshua Gross ("Gross"), stopped by briefly and departed.

45.     Gross returned shortly thereafter to find Thomas sweating profusely, agitated and not acting normal.  Concerned for his friend, Gross told Thomas to get in his (Gross') truck, intending to take Thomas to get help.

46.     Thomas and Gross headed toward town in Gross' truck.

47.     On the way to get help, Thomas started to say things and began acting in a manner that alarmed Gross.

48.     Concerned for the well being of his friend, Gross called his wife, Michelle, a Registered Nurse, on his cell phone hoping that Michelle might be able to talk with Thomas and calm him down.

49.     After explaining to his wife what was taking place, Gross handed the phone to Thomas.

50.     Thomas spoke briefly with Michelle, then rolled down the window to the truck and threw the phone out the passenger side window.

51.     At the time Thomas threw the phone out the window Gross and Thomas were located at or near 557 St. Andrews Church Road.

52.     Gross immediately slowed the truck, pulled to the side of the road (at the St. Andrews Church Road and Meadow View Drive intersection), got out and began searching for his phone to retrieve it.

53. Meanwhile, Thomas got out and began damaging portions of a decorative fence located at 557 St. Andrews Church Road.

54. Upon information and belief, Linda Schmidt, the owner of the property on which the fence was located, placed a call to 911.

55. Gross was able to calm Thomas down and get him to stop damaging the decorative fence.

56. Gross had seen Mrs. Schmidt and believed she had called the authorities. Believing the authorities were on the way, Gross told Thomas they were going to wait for the police to arrive so Thomas could get some help.

## Thomas' Fourth Amendment rights are violated by the Lee County Sheriff's Department in its use of excessive force to take Thomas into custody.

57. At or about 2:11 P.M., Deputy Matthews arrived on location responding to a 911 call.

58. Upon Deputy Matthews' arrival, Gross informed Deputy Matthews that Thomas was "losing his mind and needed help."

59. Thomas approached Deputy Matthews and told him "Sir, I have lost my mind" Deputy Matthews responded to Thomas telling him to "Get the fuck away from me!" and pushing Thomas forcefully in the chest.

60. Deputy Matthews yelled at Thomas to get on the ground.

61. Thomas approached Deputy Matthews again asking for help. Instead of helping Thomas, Deputy Matthews drew his taser from its holster and, at a range of only a few feet, fired

the taser directly into Thomas' side and lower back, discharging up to 50,000 volts of electricity into Thomas' body.

62.     At no time did Thomas threaten or intimidate Deputy Matthews, or pose any threat at all to Deputy Matthews.

63.     The shock from the taser collapsed Thomas to the ground.  When Thomas attempted to stand up, Deputy Matthews tased Thomas again.  Once again, Thomas collapsed to the ground.

64.     Thomas attempted to stand up again, and he removed the taser prongs imbedded in his back.  Deputy Matthews then charged toward Thomas, pepper spraying Thomas in the face.

65.     Shocked, increasingly disoriented, and in extreme pain Thomas turned from Deputy Matthews and fled across St. Andrews Church Road into a vacant yard.

66.     Upon information and belief, at the time Thomas crossed St. Andrews Church Road, Deputy Matthews radioed the Sheriff's Department for backup.

67.     After Deputy Matthews radioed for backup, he then pursued Thomas across St. Andrews Church Road.

68.     Thomas was running erratically, trying to wipe the burning pepper spray from his face and eyes.  Disoriented, Thomas turned and ran toward his friend Gross who had also crossed the road.  Gross tackled Thomas.

69.     Deputy Matthews and Gross then began placing handcuffs on Thomas, with Gross reassuring Thomas that he was going to get the help he needed.

70.     As Deputy Matthews and Gross were handcuffing him, Thomas was laying face down on the ground.  Gross and Matthews were successful in securing one cuff on Thomas and

were in the process of placing the other cuff on him when the backup Deputy Matthews had called for arrived. Gross continually talked to Thomas reassuring him they were going to get him help.

71.     Upon information and belief at or about this time Deputies Melton and Lloyd arrived on the scene. Several other deputies also arrived, including Deputies Babb and Holly. Deputy Babb arrived driving his vehicle at an excessive rate of speed.

72.     At or about 2:18 P.M., Deputy Babb got out of his car, and ran to where Thomas was still laying face down on the ground with Deputy Matthews and Gross handcuffing him. As soon as he reached Thomas, and while Thomas was restrained, Deputy Babb punched Thomas in the head multiple times with a closed fist.

73.     Gross yelled to Deputy Babb "Clint, you don't have to hit him!" Defendant Babb responded to Gross by telling him to "get the fuck away!"

74.     Upon information and belief, Deputy Babb's repeated use of a closed fist to the person of Thomas, in the circumstances then existing, was a violation of the Lee County Sheriff's departmental policy on use of force. Furthermore, Deputy Babb's use of a closed fist was unnecessary, unwarranted, and in no way an objectively reasonable use of force in the circumstances then existing.

75.     Upon information and belief, within moments of their arrival either Deputy Babb or Deputy Holly tased Thomas, while Thomas remained face down, prone and helpless.

76.     At or about the time Deputy Babb was repeatedly punching Thomas in the head and face, several other Defendants arrived to participate in and/or observe the beating and apprehension of Thomas. Among these Defendants was Deputy Estes.

77. Upon Deputy Estes' arrival at the scene, Thomas remained face down, prone and immobile, surrounded by multiple Lee County Sheriffs Officers who were actively and effectively restraining him.

78. Deputy Estes rapidly approached Thomas, immediately joining the growing number of Lee County Sheriffs Deputies already surrounding Thomas, and Deputy Estes began to repeatedly and violently knee Thomas in the face.

79. Upon information and belief, Deputy Estes' inflicted repeated knee-blows to Thomas' face which fractured Thomas' jaw.

80. Upon information and belief, Deputy Estes' repeated knee-blows to Thomas' face in the circumstances then existing was a violation of the Lee County Sheriff's departmental policy. Furthermore, Deputy Estes' repeated knee-blows to Thomas' face were unnecessary, unwarranted, and in no way an objectively reasonable use of force in the circumstances then existing.

81. Upon information and belief, while Deputy Estes was brutally kneeing Thomas in the face and fracturing Thomas' jaw, Deputies M.D Smith, Melton and Allen simply stood by observing, and failed to intervene, or even attempt to intervene.

82. Upon information and belief Deputies M.D. Smith, Melton and Allen's failure to intervene in the circumstances then existing was a violation of departmental policy, and was otherwise a violation of their sworn duties as law enforcement officers.

83. Thomas remained face down, helpless, prone, immobile and bleeding. At or about the time Deputy Estes was kneeing Thomas in the face, Deputy Gilstrap began to "assist" in the assault and beating of Thomas.

84.    During the time in which Deputy Gilstrap joined in the beating his taser was discharged *eight* times in ***under*** *three minutes*.

85.    Upon information and belief, Deputy Gilstrap's repeated use of his taser in the circumstance then existing was a violation of the Lee County Sheriff's departmental policy. Furthermore, Deputy Gilstrap's use of his taser was unnecessary, unwarranted, and in no way an objectively reasonable use of force in the circumstances then existing.

86.    Upon information and belief all named defendants with the Lee County Sheriff's Department, as well as an unspecified number of Defendants yet to be identified and yet to be identified Deputies, participated in and/or observed the events and occurrences of Thomas' assault and beating.

87.    Upon information and belief multiple other tasers were deployed by Lee County Sherriff's Deputies involved in the assault and beating of Thomas as evidenced by the multiple taser scars on Thomas' person.

88.    As a result of pepper spraying Thomas, repeatedly pummeling him about the head with fists, fracturing his jaw with multiple strikes to the face from Estes' knee, and tasing him (upon information and belief, more than eleven times), the Lee County Sheriff's Department called for the Lee County Emergency Medical Services ("EMS") so Thomas could receive medical attention.

89.    Upon information and belief at some point while his Deputies were continually beating and tasing Thomas, Lee County Sheriff Tracy Carter, arrived and observed Thomas being beaten up and tasered multiple times.

90.     Thomas remained face down, prone, unable to move.  Upon information and belief, Sheriff Carter arrived and observed his Deputies utilizing closed fists, knees to the face, pepper spray, and repeated taseings to "subdue" a helpless Thomas.

91.     Upon information and belief, Sheriff Carter and each of the Lee County Sheriff's Department Defendants named herein who were not involved in the restraining of Thomas, and those named as Deputies John Doe 5-15, stood idly by while at least five (5) Deputies were restraining, beating and assaulting Thomas.

92.     After being thoroughly beaten, Thomas was handcuffed, shackled, and placed on his knees.  Deputy Mora stood in front of Thomas some 12 to 18 inches away.

93.     Severely beaten and disoriented, and with his hands cuffed behind his back, Thomas was physically unable to keep his mouth closed due to his fractured jaw.  Further, Thomas was suffering acute difficulty breathing as a result of being pepper sprayed in his face.

94.     Thomas' condition after a brutal beating, pepper spraying in the face, multiple taseings, and a fractured jaw, in conjunction with Deputy Mora's unexplained close proximity to Thomas' face, may have resulted in blood and mucous getting  involuntarily spattered on Deputy Mora.

95.     At no time before, during, or after being beaten was Thomas advised of his rights.

96.     Upon information and belief, after Thomas was taken into custody, and prior to the arrival of the Emergency Medical Services ("EMS"), Deputy Gilstrap removed taser prongs from Thomas.

97.     Upon information and belief, the removal of taser Prongs by Deputy Gilstrap was a violation of Lee County Sheriff Departmental policy then existing.

98. Upon information and belief, at all times relevant to the allegations made herein, all Lee County Sheriff Deputies named individually herein, Deputies John Doe 5 through 15, and Defendants yet to be identified, in the employment of Defendant Lee County Sheriff's Department, participated in and/or observed the excessive, brutal and egregious beatings of Thomas, which resulted in the injuries herein detailed, and each failed to prevent, or even attempt to prevent or stop, the same.

99. In addition to the injury to his person, Thomas has been emotionally damaged, and continues to be damaged, in an amount in excess of $1,000,000.000, the exact amount to be determined at trial.

### Thomas is repeatedly denied Due Process.

100. As a result of the repeated pummeling, beating and taseing of Thomas, medical treatment was required, and at or about 2:26 P.M., EMS was called for and dispatched.

101. At or about 2:33 P.M., after Thomas was thoroughly beaten, handcuffed and shackled, EMS arrived. Due to the objectively unreasonable excessive force used by Defendants named herein and by Defendants yet to be identified, Thomas' jaw was fractured, his face was swollen, and he was bleeding profusely from the mouth.

102. In an effort to explain or otherwise falsely justify Thomas' brutal assault, and to cover up their egregious wrongdoings, various Defendants began making false and baseless accusations – saying Thomas had used and was under the influence of cocaine and alcohol. Upon information and belief one or multiple Defendants made these assertions to EMS personnel and others.

103.    Realizing that they might be held accountable for their actions, and deciding that "the best defense is a good offense", the Defendants then brought baseless criminal charges against Thomas, all as part of their scheme to falsely justify and otherwise cover up their egregious behavior.

104.    After removing additional taser prongs from Thomas and rendering medical care on location, EMS placed Thomas on a stretcher and transported him to Coastal Carolina Hospital ("CCH").

105.    As his friend Thomas was being placed into the ambulance, Gross called Thomas' father and informed him that the Lee County Sheriff's Department had "beat the hell out of Wayne".

106.    At or about 2:59 P.M. Thomas was admitted to CCH, where he was shackled to a bed, and where he remained shackled for the duration of his stay under the continual watch of Deputies John Doe 5 and 6.

107.    Due to Thomas' mental state and the extent of the injuries inflicted by the Defendant Lee County Sheriffs Deputies, it was necessary to administer several medications to Thomas.  Among the medications administered were Geodon (ziprasidone), Ativan (lorazepam), and Clindamaicine.

108.    Upon information and belief, at or about 3:25 P.M., and in order to further perpetuate the cover-up and the false and baseless accusations made earlier by his Deputies about Thomas' cocaine use, Sheriff Carter had his dispatcher call Dr. Pathan at CCH to "check" on the status of Thomas.  Sheriff Carter, upon information and belief, hovered over the dispatcher and directed her questions to the doctor at the Hospital.

109.    Incredibly, this orchestrated call is allegedly the only communication recorded by the Sheriff's Department, as the Sheriff's Department now claims that all of the radio transmissions relating to this matter were – conveniently - not recorded because the communications antenna was being "transitioned" to a new location at the time of the events described in this Complaint.

110.    During the aforementioned call, Dr. Pathan, apparently parroting the false information he had been given by the Defendants, informed the dispatcher and Sheriff Carter that Thomas was still "kinda coked outta his mind". The problem for Dr. Pathan and the Sheriff, however, is that Thomas had not used cocaine or any other substance.

111.    At or about 3:37 P.M., a toxicological screen for Thomas was ordered performed for a variety of tests to include testing for controlled substances and alcohol. A sample for the ordered toxicological screen of Thomas was collected at or about 4:08 pm. The toxicology tests were negative and there were no indications of any controlled substances or alcohol in Thomas' system.

112.    At or about 5:20 P.M., while heavily medicated, not lucid, and unaware of the events then transpiring, Thomas made his initial "appearance" before Magistrate Ragsdale. At the time Thomas made this "appearance" he was shackled to his hospital bed and guarded by two yet to be identified Lee County Sheriff's Deputies.

113.    Magistrate Ragsdale set Thomas' bond at $30,000.00 secured.

114.    At no time after his initial "appearance" was Thomas aware that a bond had been set or that he could post bond and be released from custody.

115.    While Thomas was at CCH, his mother, Belinda Thomas arrived and was informed by the Lee County Sheriff Deputies that she was not allowed to see her son.

116.    Upon information and belief, this was *after* Thomas had made his "appearance" in front of the Magistrate and after a bond had been set with terms for his release.

117.    Upon information and belief, after Thomas had made his initial appearance in front of Magistrate Ragsdale, Thomas' father Steve was falsely told by Sheriff Carter that Thomas had not, and would not, have a bond set, and that Steve would not be allowed to see his son.

118.    At the time Thomas' father Steve talked to Sheriff Carter, he was ready, willing and able to post bail for Thomas and Sheriff Carter was aware of this.

119.    At or about 5:56 P.M., Thomas was transferred to UNC Chapel Hill Hospital ("UNC") for surgery to treat his fractured jaw.

120.    Upon information and belief just prior to transferring Thomas to UNC, custody of Thomas was transferred to the State of North Carolina.

121.    Thomas was transferred to UNC (without his consent) because a specialist was required to treat the fracture to his jaw and one was not available at CCH.

122.    At or about 6:47 P.M., Thomas was admitted to UNC, where, over the course of several hours in the ER, surgery was performed on his fractured jaw.

123.    After surgery on his jaw was complete, a harness was placed on Thomas' head to prevent his jaw from moving.  Thomas' Doctor's clear and specific instructions were that the harness was to remain in place.

124.    After surgery Thomas was placed in recovery and continued to remain shackled to his hospital bed.

125.    Upon information and belief, and for reasons that were not medical, none of Thomas' family members were allowed to see or speak to him.

126. Upon information and belief, after the surgery Thomas became lucid and at no point was he informed of his rights, or of the fact that terms for his release had been set.

127. Several times while in recovery, Thomas requested a phone call or the opportunity to talk with his parents and/or other family members to determine if he could arrange bail but he was repeatedly denied these requests by John Does 1 - 4. Of course, John Does 1 - 4 also failed to tell Thomas that his bail had already been set.

128. Despite having a phone next to his hospital bed, when Thomas' repeated requests for a phone call were denied, he was informed by John Does 1 - 4 he could "write a letter" and that there was no phone available for his use.

129. Upon information and belief, on or about Wednesday, April 29th, an Assistant District Attorney (ADA) for Lee County made a motion on Thomas' behalf to reduce Thomas' bail to a simple promise to appear. Acting on behalf of the State the ADA did not oppose the motion.

130. On April 29, 2009 Sheriff Carter told Thomas' father for the first time that a bond had been set. Sheriff Carter later told Thomas' father, Steve, that he (Carter) had the bond reduced as "a favor" to Steve.

131. On Thursday, April 30, 2009, without input or knowledge of Thomas, an Order was entered reducing Thomas' bond to $0.00 and allowing Thomas to be released on his promise to appear.

**Thomas is Denied Prescribed Medical Care and Continues to have his Constitutional Rights Violated.**

132.    Although Thomas' bail had been set while he was at CCH, neither he nor his parents were informed of same. Neither Thomas nor his Parents were informed that they could post bond but were told that no bond was going to be set.

133.    On April 29, 2009, after receiving treatment at UNC, Thomas was transferred to Central Prison while in the custody of the Lee County Sheriff's Department.

134.    At the time of this transfer, Thomas' bond had been in place for approximately 2 days, and Thomas' father was ready, willing and able to post the bond, but Thomas was never informed he could post bond and his family was not informed his bond had been set.  In short, Thomas should never have been transferred to Central Prison.

135.    Upon arrival at Central Prison, Thomas requested he be allowed to make a phone call.  Thomas was again informed there was no phone but he was welcome to write a letter.

136.    Despite the Doctor's clear and specific instructions that Thomas' harness was to remain in place during the process of moving Thomas to a holding cell at Central Prison, Defendant Nurse Doe forced Thomas to remove his jaw harness despite Thomas' insistence that the UNC Doctor had told him to continue to wear it.

137.    Thomas was forced to remove the harness by Defendant Nurse Doe and it was then thrown away.  When Thomas informed Nurse Doe the Doctor had ordered him to keep the harness on, he was told by Nurse Doe he could get another one, but he was not given another one.  This resulted in pain and suffering by Thomas.

138.    Upon information and belief, the disposal of Thomas' harness and failure to provide a replacement was in violation of policy and procedure then in effect for Central Prison.

139.    Thomas had been prescribed pain medication to be taken three times daily for pain resulting from the injury and subsequent surgery to his jaw.

140.    While held at Central Prison, Thomas was not given pain medication as prescribed.  Rather, and incredibly, he was only allowed to take his medication once in a twenty-four hour period.

141.    The denial of prescribed pain medication caused Thomas to suffer excruciating pain.

142.    In or about the latter part of the morning on April 30, 2009, Thomas was transported from Central Prison to the Lee County Sheriff's Department where he was told he was going to be released.

143.    Upon arrival at the Lee County Sheriff's Department, Thomas still had not been advised of his rights, and in fact, was not advised of his rights at any time while in custody.

144.    Once inside the Sheriff's Department, despite not having been advised of his rights, Thomas was interrogated by Deputy Bryan Allen in a blatant attempt to elicit incriminating statements from Thomas.

145.    Incredibly, while attempting to elicit incriminating statements from Thomas, Deputy Allen secretly recorded the interview absent Thomas' knowledge or consent.

146.    Upon information and belief, Deputy Allen accomplished his secret recording of his interrogation of Thomas by conducting the interrogation outside an interrogation room in the Lee County Sheriff's Department while the audio and video recorders in the room were active.

147.    When Deputy Allen completed his interrogation of Thomas, he then ushered Thomas into the interrogation room and told Thomas to change clothes.  Absent his knowledge and without his consent, Thomas was secretly videotaped as he changed his clothes.

148.     Upon information and belief, Deputy Allen was not acting alone in his secret audio and video recording of Thomas, but he had the assistance of other Sheriff's Department Deputies and/or employees.

149.     After he changed clothes, Thomas was finally released over 2 ½ days after his bail had been set, and one day after his bail had been reduced to $0.00.  At the time Thomas was released, he had never been advised of his rights, nor was he ever been advised that a bond had been set or that he could have posted bond and been released much earlier than he was.

150.     As a direct and proximate result of the actions of the named Defendants and Defendants yet to be identified, Thomas has suffered serious and permanent, physical, psychological and emotional injuries, has sustained significant damage to his person, incurred substantial medical expenses, and has suffered lost income due to his inability to work.

## FIRST CAUSE OF ACTION
**(Use of Excessive Force in the Seizure of Plaintiff in violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983 - Deputy Matthews).**

151.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

152.     At all times relevant to this Complaint, Deputy Matthews was acting under the color of state law as a Deputy Sheriff in the employment of the Lee County Sheriff's Department.

153.     Under the Fourth and Fourteenth Amendments to the United Sates Constitution, Deputy Matthews was prohibited from using excessive force in his efforts to seize, detain, and/or search Thomas.

154.    The actions of Deputy Matthews as detailed herein constitute excessive and unlawful force in gross violation of Thomas' rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983.

155.    Deputy Matthews' actions include, but are not limited to:

a.  Pushing Thomas forcefully and yelling at him: "get the fuck away from me";

b.  When Thomas continued to seek help Matthews responded by drawing his taser, discharging the taser into Thomas' body and activating the taser multiple times;

c.  When Thomas continued to seek assistance from Deputy Matthews, Mathews responded by discharging pepper spray in Thomas' face;

d.  When Thomas was prone and face down and controllable, Matthews continued to discharge his taser into Thomas' body.

156.    Upon information and belief, when additional Defendant's arrived, Matthews continued to utilize excessive, unnecessary, and unlawful force in the restraint and/or apprehension of Thomas.

157.    The force used by Deputy Matthews was intentional, excessive, unreasonable, absent any lawful justification or excuse, unconstitutional, and it inflicted unnecessary pain and suffering against Thomas.

158.    As a direct and proximate result of Deputy Matthews' unlawful and unconstitutional conduct as described herein, Thomas has been damaged, and continues to be damaged, in an amount to be determined at trial.

159.    Deputy Matthews' actions as described herein and his use of force were intentional, wanton, willful, malicious, manifested blatant and reckless disregard for Thomas'

constitutionally protected rights, and as such Thomas is entitled to punitive damages from Matthews individually.

160.    Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorney fees.

## SECOND CAUSE OF ACTION
**(Alternative Use of Excessive Force in violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983 - Deputy Matthews).**

161.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

162.    This claim is made alternative to the First Cause of Action.

163.    At all times relevant to this Complaint, Deputy Matthews was acting under the color of state law as a Deputy Sheriff in the employment of the Lee County Sheriff's Department.

164.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Deputy Matthews was prohibited from intentionally inflicting unnecessary and wanton pain and suffering against Thomas once Thomas had been seized.

165.    To the extent Thomas had been seized once Matthews and Gross had him prone, face down and were applying handcuffs, the actions of Deputy Matthews as detailed herein constitute excessive and unlawful force in gross violation of Thomas' rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983.

166.    Specifically, Deputy Matthews took these unlawful and unconstitutional actions after Thomas had been seized.

167.    Upon information and belief, Deputy Matthews' actions taken after the seizure of Thomas included discharging his taser into Thomas' person when Thomas was prone, face down, and immobile.

168.    Upon information and belief, Deputy Matthews willfully and wantonly inflicted unnecessary pain and suffering upon Thomas after Thomas had been seized.

169.    The force used by Deputy Matthews was excessive, unreasonable, absent any lawful justification or excuse, and unconstitutional.

170.    As a direct and proximate result of Deputy Matthews' unlawful and unconstitutional conduct as described herein, Thomas has been damaged, and continues to be damaged, in an amount to be determined at trial.

171.    Deputy Matthews' actions as described herein and his use of force were wanton, willful, malicious, manifested blatant and reckless disregard for Thomas' constitutionally protected rights, and as such Thomas is entitled to punitive damages from Matthews individually.

172.    Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorney fees.


### THIRD CAUSE OF ACTION
**(Use of Excessive Force in the Seizure of Plaintiff in violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983 - Deputies Babb and Holly)**

173.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

174.    At all times relevant to this Complaint, Deputies Babb and Holly were acting under the color of state law as Deputies in the employment of the Lee County Sheriff's Department.

175.     Under the Fourth and Fourteenth Amendments to the United States Constitution, Deputies Babb and Holly were prohibited from using excessive force in their efforts to seize, detain, and/or search Thomas.

176.     The actions of Deputies Babb and Holly as detailed herein constitute excessive and unlawful force in gross violation of Thomas' rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983.These actions include, but are not limited to:

    a.   Repeated use of a closed fist by Deputy Babb to Thomas' head.

    b.   Upon information and belief, tasing Thomas by either Deputy Babb and/or Deputy Holly when Thomas was restrained, immobile, and defenseless.

177.     Upon information and belief, when additional Defendants arrived, Deputies Babb and Holly continued to utilize excessive, unnecessary, and unlawful force against Thomas.

178.     The force used by Deputies Babb and Holly was intentional, excessive, unreasonable, absent any lawful justification or excuse, unconstitutional, and it inflicted unnecessary pain, injury, and suffering against Thomas.

179.     As a direct and proximate result of Deputies Babb and Holly's unlawful and unconstitutional conduct as described herein, Thomas has been damaged, and continues to be damaged, in an amount to be determined at trial.

180.     Deputies Babb and Holly's actions as described herein and their use of force were intentional, wanton, willful, malicious, manifested blatant and reckless disregard for Thomas' constitutionally protected rights, and as such Thomas is entitled to punitive damages from Babb and Holly individually.

181.     Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorneys fees.

## FOURTH CAUSE OF ACTION
### (Alternative Use of Excessive Force in violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983 - Deputies Babb and Holly)

182.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

183.    At all times relevant to this Complaint, Deputies Babb and Holly were acting under the color of state law as Deputies in the employment of the Lee County Sheriff's Department.

184.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Deputies Babb and Holly were prohibited from intentionally inflicting unnecessary and wanton pain and suffering against Thomas once Thomas had been seized.

185.    To the extent Thomas had been seized upon the arrival of Deputies Babb and Holly, the actions of Deputies Babb and Holly as detailed herein constitute excessive and unlawful force in gross violation of Thomas' rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983. These actions include, but are not limited to:

    a.    Repeated use of a closed fist by Deputy Babb to Thomas' head.

    b.    Upon information and belief, tasing Thomas by either Deputy Babb and/or Deputy Holly when Thomas was restrained, immobile, and defenseless.

186.    Upon information and belief, Deputies Babb and Holly willfully and wantonly inflicted unnecessary pain and suffering on Thomas after his seizure.

187.    The force used by Deputies Babb and Holly was intentional, excessive, unreasonable, absent any lawful justification or excuse, unconstitutional, and it inflicted unnecessary pain, injury and suffering against Thomas.

188.     As a direct and proximate result of Deputies Babb and Holly's unlawful and unconstitutional conduct as described herein, Thomas has been damaged, and continues to be damaged, in an amount to be determined at trial.

189.     Deputies Babb and Holly's actions as described herein and their use of force were wanton, willful, manifested blatant and reckless disregard for Thomas' constitutionally protected rights, and as such Thomas is entitled to punitive damages from Babb and Holly individually.

190.     Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorneys fees.

## FIFTH CAUSE OF ACTION
### (Use of Excessive Force in the Seizure of Plaintiff in violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983 - Deputy Estes)

191.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

192.     At all times relevant to this Complaint, Deputy Estes was acting under the color of state law in the employment of the Lee County Sheriff's Department.

193.     Under the Fourth and Fourteenth Amendments to the United States Constitution, Deputy Estes was prohibited from using excessive force in his efforts to seize, detain, and/or search Thomas.

194.     The actions of Deputy Estes as detailed herein constitute excessive and unlawful force in gross violation of Thomas' rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983.  These actions include, but are not limited to Deputy Estes repeatedly striking Thomas in the Face with his knee as Thomas lay defenseless and fracturing Thomas' jaw.

195.     Upon information and belief, when additional Defendants arrived, Deputy Estes continued to utilize excessive, unnecessary, and unlawful force in Thomas' apprehension.

196. The force used by Deputy Estes was intentional, excessive, unreasonable, absent any lawful justification or excuse, unconstitutional, and it inflicted unnecessary pain, injury, and suffering against Thomas.

197. As a direct and proximate result of Deputy Estes' unlawful and unconstitutional conduct as described herein, Thomas has been damaged, and continues to be damaged, in an amount to be determined at trial.

198. Deputy Estes' actions as described herein and his use of force was intentional, wanton, willful, malicious, manifested blatant and reckless disregard for Thomas' constitutionally protected rights, and as such Thomas is entitled to punitive damages from Estes individually.

199. Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorneys fees.

## SIXTH CAUSE OF ACTION
**(Alternative Use of Excessive Force in violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983 - Deputy Estes)**

200. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

201. At all times relevant to this Complaint, Deputy Estes was acting under the color of state law in the employment of the Lee County Sheriff's Department.

202. Under the Fourth and Fourteenth Amendments to the United States Constitution, Deputy Estes was prohibited from intentionally inflicting unnecessary and wanton pain and suffering against Thomas once Thomas had been seized.

203. The actions of Deputy Estes as detailed herein constitute excessive and unlawful force in gross violation of Thomas' rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983. These actions

include, but are not limited to repeatedly striking Thomas in the face with his knee as Thomas laid defenseless and fracturing Thomas' jaw.

204. Upon information and belief, after Thomas had been seized, Deputy Estes intentionally, unnecessarily, and wantonly inflicted pain and suffering upon Thomas.

205. The force used by Deputy Estes was excessive, unreasonable, absent any lawful justification or excuse, unconstitutional, and inflicted unnecessary pain, injury and suffering against Thomas.

206. As a direct and proximate result of Deputy Estes' unlawful and unconstitutional conduct as described herein, Thomas has been damaged, and continues to be damaged, in an amount to be determined at trial.

207. Deputy Estes' actions as described herein and his use of force was intentional, wanton, willful, malicious, manifested blatant and reckless disregard for Thomas' constitutionally protected rights, and as such Thomas is entitled to punitive damages from Estes individually.

208. Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorneys fees.


## SEVENTH CAUSE OF ACTION
### (Use of Excessive Force in the Seizure of Plaintiff in violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983 - Deputy Gilstrap)

209. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

210. At all times relevant to this Complaint, Deputy Gilstrap was acting under the color of state law in the employment of the Lee County Sheriff's Department.

211.     Under the Fourth and Fourteenth Amendments to the United States Constitution, Deputy Gilstrap was prohibited from using excessive force in his efforts to seize, detain, and/or search Thomas.

212.     The actions of Deputy Gilstrap as detailed herein constitute excessive and unlawful force in gross violation of Thomas' rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983. These actions include, but are not limited to, upon information and belief, Deputy Gilstrap discharging his taser at least *eight times* in a period of less than *three minutes* into Thomas' person.

213.     Upon information and belief, when additional Defendant's arrived, Deputy Gilstrap continued to utilize excessive, unreasonable, and unlawful force in Thomas' apprehension.

214.     The force used by Deputy Gilstrap was intentional, excessive, unreasonable, absent any lawful justification or excuse, and unconstitutional, and it inflicted unnecessary pain, injury and suffering against Thomas.

215.     As a direct and proximate result of Deputy Gilstrap's unlawful and unconstitutional conduct as described herein, Thomas has been damaged, and continues to be damaged, in an amount to be determined at trial.

216.     Deputy Gilstrap's actions as described herein and his use of force was intentional, wanton, willful, malicious, manifested blatant and reckless disregard for Thomas' constitutionally protected rights, and as such Thomas is entitled to punitive damages from Gilstrap individually.

217.     Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorneys fees.

**EIGHTH CAUSE OF ACTION**
**(Alternative Use of Excessive Force in violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983 - Deputy Gilstrap)**

218.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

219.    At all times relevant to this Complaint, Deputy Gilstrap was acting under the color of state law in the employment of the Lee County Sheriff's Department.

220.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Deputy Gilstrap was prohibited from intentionally inflicting unnecessary and wanton pain and suffering against Thomas once Thomas had been seized.

221.    Upon information and belief, after Thomas had been seized, Deputy Gilstrap intentionally, unnecessarily, and wantonly inflicted pain and suffering upon Thomas.

222.    Deputy Gilstrap intentionally, unnecessarily and wantonly inflicted pain and suffering on Thomas by, among other things, upon information and belief, discharging his taser at least ***eight times*** in a period of less than ***three minutes*** into Thomas' person after Thomas had been seized.

223.    The actions of Deputy Gilstrap as detailed herein, constitute excessive and unlawful force in gross violation of Thomas' rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983, and the force used by Deputy Gilstrap was excessive, unreasonable, absent any lawful justification or excuse, and unconstitutional.

224.    As a direct and proximate result of Deputy Gilstrap's unlawful and unconstitutional conduct as described herein, Thomas has been damaged, and continues to be damaged, in an amount to be determined at trial.

225.     Deputy Gilstrap's actions as described herein and his use of force was intentional, wanton, willful, malicious, manifested blatant and reckless disregard for Thomas' constitutionally protected rights, and as such Thomas is entitled to punitive damages from Gilstrap individually.

226.     Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorneys fees.

## NINTH CAUSE OF ACTION
### (Use of Excessive Force in the Seizure of Plaintiff in violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983 – Deputies John Doe 5 – 15 and Defendants yet to be Identified)

227.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

228.     Upon information and belief at all times relevant to this Complaint, Deputies John Doe 5 -15 and the Defendants yet to be Identified were acting under the color of state law in the employment of the Lee County Sheriff's Department.

229.     Under the Fourth and Fourteenth Amendments to the United States Constitution, Deputies John Doe 5 -15 and the Defendants yet to be Identified were prohibited from using excessive force in any efforts to seize, detain, and/or search Thomas.

230.     Upon information and belief, an as yet to be determined number of Defendants from Deputies John Doe 5 -15 and the Defendants yet to be Identified participated in the actions detailed herein and said actions constitute excessive and unlawful force in gross violation of Thomas' rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983.  These actions include, but are not limited to, upon information and belief, repeatedly beating Thomas and/or the discharging of tasers into the person of Thomas as he lay helpless.

231. The force used by all Lee County Sheriff's Department Deputies, identified or otherwise, was intentional, excessive, unreasonable, absent any lawful justification or excuse, unconstitutional, and it inflicted unnecessary pain, injury and suffering against Thomas.

232. As a direct and proximate result of the unlawful and unconstitutional conduct of Deputies John Doe 5 – 15 and the Defendants yet to be Identified as described herein, Thomas has been damaged, and continues to be damaged, in an amount to be determined at trial.

233. The actions of Deputies John Doe 5 – 15 and the Defendants yet to be Identified described herein and their use of force was intentional, wanton, willful, malicious, manifested blatant and reckless disregard for Thomas' constitutionally protected rights, and as such Thomas is entitled to punitive damages from each of these Defendants individually as they are identified.

234. Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorneys fees.

## TENTH CAUSE OF ACTION
**(Alternative Use of Excessive Force in violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983 –Deputies John Doe 5 – 15 and Defendants yet to be Identified)**

235. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

236. Upon information and belief at all times relevant to this Complaint, Deputies John Doe 5 -15 and the Defendants yet to be Identified were acting under the color of state law in the employment of the Lee County Sheriff's Department.

237. Under the Fourth and Fourteenth Amendments to the United States Constitution, Deputies John Doe 5 -15 and the Defendants yet to be Identified were prohibited from using excessive force once Thomas had been seized.

238. Upon information and belief, multiple Deputies John Doe 5- 15 and Defendants yet to be Identified participated in the actions detailed herein and said actions constitute

excessive and unlawful force in gross violation of Thomas' rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983.

239.    As alleged herein the actions taken by Deputies John Doe 5 -15 and the Defendants yet to be Identified, constitute excessive and unlawful force in gross violation of Thomas' rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983.  As Thomas lay helpless, these actions include, but are not limited to, upon information and belief; repeatedly beating and/or striking Thomas with closed fists and other appendages, and/or the discharging of tasers into the person of Thomas.

240.    The force used by Deputies John Doe 5 – 15 and the Defendants yet to be Identified was excessive, unreasonable, absent any lawful justification or excuse, and unconstitutional.

241.    As a direct and proximate result of Deputies John Doe 5 – 15 and the Defendants yet to be Identified's unlawful and unconstitutional conduct as described herein, Thomas has been damaged, and continues to be damaged, in an amount to be determined at trial.

242.    Deputies John Doe 5 – 15 and the Defendants yet to be Identified's actions as described herein: use of force was intentional, wanton, willful, malicious, manifested blatant and reckless disregard for Thomas' constitutionally protected rights, and as such Thomas is entitled to punitive damages from each of these Defendants individually as they are identified.

243.    Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorneys fees.

**ELEVENTH CAUSE OF ACTION**

**(Alternative Use of Excessive Force in the Seizure of Plaintiff in violation of the 4th and
14th Amendments, Pursuant to 42 U.S.C. § 1983 – Deputies John Doe 5 – 15 and
Defendants yet to be Identified)**

244.     The foregoing and all other paragraphs herein are incorporated by reference as if
fully set forth.

245.     Upon information and belief at all times relevant to this Complaint, Deputies John
Doe 5 -15 and the Defendants yet to be Identified were acting under the color of state law in the
employment of the Lee County Sheriff's Department.

246.     Under the Fourth and Fourteenth Amendments to the United States Constitution,
Deputies John Doe 5 -15 and the Defendants yet to be identified from were prohibited from
intentionally inflicting unnecessary and wanton pain and suffering against Thomas once Thomas
had been seized.

247.     Upon information and belief, after Thomas had been seized, multiple Deputies,
including John Doe 5 – 15 and the Defendants yet to be Identified, participated in the actions
detailed herein intentionally, unnecessarily and wantonly, inflicting pain and suffering upon
Thomas.

248.     As alleged herein the actions taken by Deputies John Doe 5 -15 and the
Defendants yet to be Identified constitute excessive and unlawful force in gross violation of
Thomas' rights under the Fourth and Fourteenth Amendments of the United States Constitution
and the guarantees set forth in 42 U.S.C. § 1983.  As Thomas lay helpless, these actions include,
but are not limited to, upon information and belief; repeatedly beating and/or striking Thomas
with closed fists and other appendages, and/or the discharging of tasers into the person of
Thomas.

249. The force used by Deputies John Doe 5 – 15 and the Defendants yet to be Identified was excessive, unreasonable, absent any lawful justification or excuse, and unconstitutional.

250. As a direct and proximate result of Deputies John Doe 5 – 15 and the Defendants yet to be Identified's unlawful and unconstitutional conduct as described herein, Thomas has been damaged, and continues to be damaged, in an amount to be determined at trial.

251. The actions of Deputies John Doe 5 – 15 and the Defendants yet to be Identified's actions as described herein and their use of force was intentional, wanton, willful, malicious, manifested blatant and reckless disregard for Thomas' constitutionally protected rights, and as such Thomas is entitled to punitive damages from each of these Defendants individually as they are Identified.

252. Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorneys fees.

## TWELFTH CAUSE OF ACTION
**(Alternative Use of Excessive Force in violation of the Article I §§ 18 & 19 of the North Carolina Constitution – Deputies Matthews, Babb, Holly, Estes, Gilstrap, Deputies John Doe 5-15, and Defendants yet to be identified)**

253. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

254. At all times relevant to this Complaint, Deputies Matthews, Babb, Holly, Estes, Gilstrap, Deputies John Doe 5-15, and Defendants yet to be Identified (collectively the "Defendants") were acting under the color of state law in the employment of the Lee County Sheriff's Department.

255. Under Article I §§ 18 & 19 of the North Carolina Constitution the Defendants were prohibited from using excessive force in their efforts to seize, detain, and/or search

Thomas, and were prohibited from violating Thomas' right to be free and from unreasonable seizure, and his right to liberty. These alternative North Carolina Constitutional claims are plead in the event, and to the extent, that sovereign or governmental immunity, of any sort, is determined to exist; in such event Thomas has no adequate remedy at law and asserts these violations of his North Carolina Constitutional rights and claims for damages pursuant to the laws of North Carolina.

256. The Defendants participated in the actions as alleged and detailed herein. Said actions constitute excessive and unlawful force in gross violation of Thomas' rights under Article I §§ 18 & 19 of the North Carolina Constitution. As Thomas lay helpless, these actions include, but are not limited to, upon information and belief; repeatedly beating and/or striking Thomas with closed fists and other appendages, and/or the discharging of tasers into the person of Thomas.

257. The force used by the Defendants was excessive, unreasonable, absent any lawful justification or excuse, and unconstitutional.

258. As a direct and proximate result of the Defendants' unlawful and unconstitutional conduct as described herein, Thomas has been damaged, and continues to be damaged in an amount greater than $10,000.00.

259. The Defendants' actions as described herein were intentional, wanton, willful, malicious, manifested blatant and reckless disregard for Thomas' constitutionally protected rights, and as such Thomas is entitled to punitive damages from each of these Defendants individually.

## THIRTEENTH CAUSE OF ACTION
### (Alternative Use of Excessive Force in the Seizure of Thomas in violation of Article I §§ 18 & 19 of the North Carolina Constitution - Deputies Matthews, Babb, Holly, Estes, Gilstrap, Deputies John Doe 5-15, and Defendants yet to be Identified)

260. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

261. At all times to this Complaint, Deputies Matthews, Babb, Holly, Estes, Gilstrap, Deputies John Doe 5-15, and Defendants yet to be Identified (collectively the "Defendants") were acting under the color of state law in the employment of the Lee County Sheriff's Department.

262. Under Article I §§ 18 & 19 of the North Carolina Constitution the Defendants were prohibited from intentionally inflicting unnecessary and wanton pain and suffering against Thomas once Thomas had been seized.

263. Under Article I §§ 18 & 19 of the North Carolina Constitution the Defendants were prohibited from using excessive force in their efforts to seize, detain, and/or search Thomas, and were prohibited from violating Thomas' right to be free and from unreasonable seizure, and his right to liberty. These alternative North Carolina Constitutional claims are plead in the event, and to the extent, that sovereign or governmental immunity, of any sort is determined to exist; in such event Thomas has no adequate remedy at law and asserts these violations of his North Carolina Constitutional rights and claims for damages pursuant to the laws of North Carolina.

264. The Defendants participated in the actions as alleged and detailed herein. Said actions constitute excessive and unlawful force in gross violation of Thomas' rights under Article I §§ 18 & 19 of the North Carolina Constitution. As Thomas lay helpless, these actions include, but are not limited to, upon information and belief; repeatedly beating and/or striking

Thomas with closed fists and other appendages, and/or the discharging of tasers into the person of Thomas.

265.     The force used by the Defendants was excessive, unreasonable, absent any lawful justification or excuse, and unconstitutional.

266.     As a direct and proximate result of the Defendants' unlawful and unconstitutional conduct as described herein, Thomas has been damaged, and continues to be damaged, in an amount greater than $10,000.00.

267.     The Defendants' actions as described herein were intentional, wanton, willful, malicious, manifested blatant and reckless disregard for Thomas' constitutionally protected rights, and as such Thomas is entitled to punitive damages from each of these Defendants individually.

## FOURTEENTH CAUSE OF ACTION
**(Failure to Intervene during the beating of Thomas – Individual Defendants Sheriff Carter, Deputy Pablo Mora, Deputy Mark Melton, Deputy M.D. Smith, Deputy Bill Marcum, Deputy Darrin Smith, Deputy Bryan Allen, Deputy Don Lloyd, Deputies John Doe 5- 15 and Defendants yet to be Identified)**

268.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

269.     At all times relevant to this Complaint, the Defendants Sheriff Carter, Deputy Pablo Mora, Deputy Mark Melton, Deputy M.D. Smith, Deputy Bill Marcum, Deputy Darrin Smith, Deputy Bryan Allen, Deputy Don Lloyd and Deputies John Doe 5 - 15 and Defendants yet to be Identified (collectively "Non-Intervening Defendants"), were acting under the color of state law in the employment of the Lee County Sheriff's Department.

270.     Under the Fourth and Fourteenth Amendments to the United States Constitution, all Defendants who engaged in the effort to seize, detain and/or search Thomas were prohibited from using excessive force in same.

271.     As officers, Deputies and/or supervisors of the Lee County Sheriff's Department the Non-Intervening Defendants each owed a duty to Thomas to intervene to prevent or stop violations of Thomas' constitutional rights.  Specifically, each Non-Intervening Defendant had a duty to ensure excessive force was not utilized in Thomas' apprehension, detention, and/or seizure and to take reasonable steps to intervene to prevent and/or stop the same.  However each Non-Intervening Defendant failed to satisfy their duty to do so, and each Non-Intervening Defendant failed to make any effort at all to do so.

272.     Upon information and belief, the Non-Intervening Defendants each had reasonable opportunity to intervene and prevent or stop injury to Thomas, and each could have so intervened, but each willfully failed to do so.

273.     As a direct and proximate result of the Non-Intervening Defendant's failure to intervene to prevent the use of excessive force against Thomas, excessive force was in fact used against Thomas in his apprehension, detention and/or seizure, and Thomas was injured thereby.

274.     The Non-Intervening Defendants' failure to intervene to prevent or stop the use of excessive force in the apprehension, detention, and/or seizure of Thomas was willful, wanton, malicious, and done absent any regard and/or concern for Thomas' constitutional rights.

275.     As a direct and proximate result of the Non-Intervening Defendants' failure to intervene in the unlawful, brutal beating and apprehension of Thomas, Thomas has suffered, and continues to suffer, substantial damages in an amount to be proved at trial.

276.     The Non-Intervening Defendants' failure to intervene as described herein was intentional, wanton, willful, malicious, and manifested blatant and reckless disregard for Thomas' constitutionally protected rights, and as such Thomas is entitled to punitive damages from each named Defendant individually.

277.     Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorneys fees.

## FIFTEENTH CAUSE OF ACTION
**(Alternative Failure to Intervene after the seizure of Thomas – Individual Defendants Sheriff Carter, Deputy Pablo Mora, Deputy Mark Melton, Deputy M.D. Smith, Deputy Bill Marcum, Deputy Darrin Smith, Deputy Bryan Allen, Deputy Don Lloyd, Deputies John Doe 5- 15 and Defendants yet to be Identified)**

278.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

279.     At all times relevant to this Complaint, the Defendants Sheriff Carter, Deputy Pablo Mora, Deputy Mark Melton, Deputy M.D. Smith, Deputy Bill Marcum, Deputy Darrin Smith, Deputy Bryan Allen, Deputy Don Lloyd, Deputies John Doe 5 – 15, and Defendants yet to be Identified   (collectively "Non-Intervening Defendants"), were acting under the color of state law in the employment of the Lee County Sheriff's Department.

280.     Under the Fourth and Fourteenth Amendments to the United States Constitution, all Non-Intervening Defendants were prohibited from intentionally inflicting unnecessary and wanton pain and suffering against Thomas once Thomas had been seized.

281.     As officers, Deputies and/or supervisors of the Lee County Sheriff's Department the Non-Intervening Defendants owed a duty to Thomas to intervene to prevent and/or stop violations of Thomas' constitutional rights once Thomas had been seized.  Specifically, each Non-Intervening Defendant had a duty to ensure Thomas was not subjected to unnecessary, wanton, pain and suffering.

282. Upon information and belief, the Non-Intervening Defendants each had reasonable opportunity to intervene and prevent or stop the infliction of wanton pain and suffering to Thomas, and each could have so intervened, but each willfully failed to do so.

283. As a direct and proximate result of the Non-Intervening Defendants' failure to intervene and prevent and/or stop the infliction of wanton pain and suffering to Thomas, Thomas has suffered, and continues to suffer substantial damages in an amount to be proved at trial.

284. As a direct and proximate result of the Non-Intervening Defendants' failure to intervene to prevent and/or stop the use of excessive force against Thomas, excessive force was in fact used against Thomas in his apprehension, detention and/or seizure, and Thomas was injured thereby, and needlessly, experienced pain and suffering.

285. The Non-Intervening Defendants' failure to intervene as described herein was wanton, willful, manifested blatant and reckless disregard for Thomas' constitutionally protected rights, and as such Thomas is entitled to punitive damages from each named Non-Intervening Defendant individually.

286. Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorneys fees.

### SIXTEENTH CAUSE OF ACTION
**(Unconstitutional Custom or Practice of Excessive Use of Force - Defendant Lee County Pursuant to 42 U.S.C. § 1983.)**

287. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

288. Under the Fourth and Fourteenth Amendments to the United States Constitution, Lee County is prohibited from allowing its Sheriffs Deputies to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise its law enforcement officers in the proper use of force.

289.     As alleged herein, the Lee County Sheriff's Department and, thereby, Lee County have engaged in a pattern, practice, policy, or custom of allowing their Sheriff's Deputies to use excessive and unlawful force in connection with subduing and/or apprehending individuals, to include the employment of tasers.  Further, the Lee County Sheriff's Department and, thereby, Lee County, have failed to properly train Sheriff's Deputies in the proper application of force and/or use of their tasers.

290.     Upon information and belief, Sheriff's Deputies with the Lee County Sheriff's Department have been allowed to use excessive and unlawful force absent proper supervision or consequence, including excessive physical force and the unlawful use of tasers.

291.     Lee County's allowing its Sheriff's Deputies to engage in a pattern, practice, policy, or custom of violating citizens' constitutional rights, including the use of physical force to apprehend and the unlawful use of tasers, was a direct and proximate cause of Thomas' injuries.

292.     Upon information and belief, Lee County has failed to discipline any of the named Defendant Sheriff's Deputies for the conduct as alleged herein, and as such has ratified their improper, willful, wanton, and unlawful actions with respect to the use of force.

293.     As alleged herein, the force used by individual Defendants named and unnamed on Thomas was unreasonable, excessive, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, policy, and/or custom of the Lee County Sheriff's Department and Lee County.

294.     As a direct and proximate result of the Lee County Sheriff's Department's unconstitutional conduct, Thomas has been damaged, and continues to be damaged, in an amount to be determined at trial.

295.     Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorneys fees.

## SEVENTEENTH CAUSE OF ACTION
**(Unconstitutional Custom or Practice of Excessive use of Force - Sheriff Carter, Individually and in his official capacity as Lee County Sheriff, Pursuant to 42 U.S.C. § 1983.)**

296.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

297.     Under the Fourth and Fourteenth Amendments to the United States Constitution, the Lee County Sheriff's Department is prohibited from allowing its Sheriff's Deputies to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper use of force.

298.     As alleged herein, Sheriff Carter, and thereby, the Lee County Sheriff's Department have engaged in a pattern, practice, policy, or custom of allowing Lee County Sheriff's Deputies to use excessive and unlawful force in connection with subduing and/or apprehending individuals to include the employment of tasers, and in so doing have failed to properly train and/or supervise Lee County Sheriff's Deputies in the proper application of force and/or use of their tasers.

299.     Upon information and belief, Sheriff's Deputies with the Lee County Sheriff's Department have been allowed to use excessive and unlawful force absent proper supervision or consequence, including excessive physical force and the unlawful use of tasers.  In fact, in the instant case, Sheriff Carter stood by and observed as Thomas' Constitutional Rights were repeatedly violated by his Deputies, and he did nothing.

300.     Sheriff Carter's indifference and/or failure to act as Thomas was being beaten and tasered while he observed, and his allowing the use of blatantly excessive force as he observed,

ratified his Deputies' engagement in a pattern, practice, policy, or custom of violating citizens' constitutional rights, to include without limitation, the use of physical force and tasers to apprehend, detain, and/or seize Thomas, which in turn proximately caused Thomas' injuries.

301.    Upon information and belief, Sheriff Carter has failed to discipline any of the named Defendant Sheriff's Deputies, or Deputies John Doe, or anyone else for the conduct as alleged herein, and as such has further ratified their improper, willful, wanton, and unlawful actions with respect to their excessive and unlawful use of force.

302.    As alleged herein, the force by all named Defendants Deputies John Doe 5 -15, and Defendants yet to be Identified used on Thomas was unreasonable, excessive, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, policy, and/or custom of the Lee County Sheriff's Department and Sheriff Carter.

303.    As a direct and proximate result of the Sheriff Carter's and Lee County's failure to appropriately supervise Lee County Sheriff's Deputies and his ratification of their unlawful and unconstitutional conduct, Thomas has been damaged, and continues to be damaged, in an amount to be determined at trial.

304.    Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorneys fees.


### EIGHTEENTH CAUSE OF ACTION
**(Inadequate Training Pursuant to 42 U.S.C. § 1983.  Defendant – Lee County)**

305.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

306.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Lee County is prohibited from allowing its Sheriff's Deputies to engage in a pattern, practice,

policy or custom of violating citizens' constitutional rights, and is further obligated to train and supervise its law enforcement officers in the proper use of force.

307.    At all relevant times Sheriff Carter, in his official capacity as Sheriff of Lee County, directly and through his employees, agents and deputies, had an obligation to insure that he and his employees, agents and deputies exercised the same degree of care that a reasonable and prudent person would exercise in the same or a similar situation with respect to the training of all employees, agents, and deputies under his direction and control.

308.    Upon information and belief the training provided and/or required by Sheriff Carter and the Lee County Sheriff's Department regarding the appropriate use of force was inadequate, insufficient, or nonexistent, and Sheriff Carter, directly and through his employees, agents, and deputies, failed to exercise the above requisite degree of care in the training of all employees, agents, and deputies under his direction and control.

309.    It was readily foreseeable and highly predictable that failing to properly train Sheriff's Deputies in the proper application of force would, and in fact did, result in the violation of Thomas' constitutional rights as alleged herein, and Lee County was indifferent to same.

310.    As alleged herein, the force used on Thomas was unreasonable, excessive, and absent any lawful justification and/or excuse, and it was a direct result of Sheriff Carter's and Lee County's failure to adequately train their Sheriff's Deputies in the use of same.

311.    As a direct and proximate result of Sheriff Carter's and Lee County's failure to adequately train their Sheriff's Deputies, Thomas was injured as detailed herein and has suffered, and continues to suffer, damages in an amount to be determined at trial.

312.    Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorneys fees.

## NINETEENTH CAUSE OF ACTION
### (Failure to Supervise, Defendants: Lee County and Tracy Carter in His Official Capacity as Lee County Sheriff)

313.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

314.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Lee County is prohibited from allowing its Sheriff's Deputies to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights, and is further obligated to train and supervise its law enforcement officers in the proper use of force.

315.    At all relevant times Sheriff Carter, in his official capacity as Sheriff of Lee County, directly and through his employees, agents and deputies, had an obligation to insure that he and his employees, agents and deputies exercised the same degree of care that a reasonable and prudent person would exercise in the same or a similar situation with respect to the supervision of all employees, agents, and deputies under his direction and control.

316.    Upon information and belief the supervision provided and/or required by Sheriff Carter and the Lee County Sheriff's Department regarding the appropriate use of force was inadequate, insufficient, or nonexistent, and Sheriff Carter, directly and through his employees, agents, and deputies, failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

317.    It was readily foreseeable and highly predictable that failing to properly supervise Sheriff's Deputies in the proper application of force would, and in fact did, result in the violation of Thomas' constitutional rights as alleged herein, and Lee County was indifferent to same.

318.    As alleged herein, the force used on Thomas was unreasonable, excessive, and absent any lawful justification and/or excuse, and it was a direct result of Sheriff Carter's and Lee County's failure to adequately supervise their Sheriff's Deputies in the use of same.

319.    As a direct and proximate result of Sheriff Carter's and Lee County's failure to adequately supervise their Sheriff's Deputies, Thomas was injured as detailed herein and has suffered, and continues to suffer damages in an amount to be determined at trial.

320.    Lee County and Sheriff Carter's failure to properly supervise their Sheriffs deputies was tantamount to deliberate indifference.

321.    As alleged herein, the Lee County Sheriff's Department and, thereby, Lee County have engaged in a pattern, practice, policy, or custom of allowing their Sheriff's Deputies to use excessive and unlawful force in connection with subduing individuals to include the employment of tasers.

322.    Sheriff Carter's presence and failure to adequately supervise, and failure to intervene at and during the brutal beating and apprehension of Thomas, further confirms the aforementioned pattern and practice.  Further, as an official of Lee County, Sheriff Carter's actions are synonymous with Defendant Lee County.

323.    Defendant Lee County was aware, and should have foreseen, that its Sheriff's Deputies would confront situations such as that presented by Thomas.

324.    Upon information and belief, situations involving the use of force similar to that which resulted in the deprivation of Thomas' constitutional rights and the injuries detailed herein, have previously been experienced by Lee County Sheriff's Deputies and have been similarly mishandled as alleged herein.

325. Defendants' Deputies' unlawful and excessive application of force and/or the deprivation of Due Process in circumstances such as those detailed herein will frequently, and did in the instant case, result in the depravation of individual constitutional rights as alleged herein.

326. As a direct and proximate result of the Sheriff Carter's and Lee County's deliberate indifference to the supervision of their deputies as herein detailed, Thomas has been injured, and continues to suffer injury, in an amount to be determined at trial.

327. Pursuant to 42 U.S.C. § 1988 Thomas is entitled to recovery of his Attorneys fees.

## TWENTIETH CAUSE OF ACTION
**(Assault, Lee County, Lee County Sheriff's Department and Individual Defendants – Deputy Matthews, Deputy Babb, Deputy Holly, Deputy Estes, Deputy Gilstrap , Deputies John Doe 5-15 and Defendants yet to be Identified - in their Individual and Official Capacities)**

328. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

329. The conduct of Deputies Matthews, Babb, Holly, Estes, Gilstrap, Deputies John Doe 5 – 15, and Defendants yet to be Identified (collectively the "Defendants") both during and after the unconstitutional seizure of Thomas' person, placed Thomas in reasonable fear of immediate contact, said contact being without lawful privilege or Thomas' consent, in violation of North Carolina law.

330. Defendants, by intentional acts or displays of force and violence, threatened Thomas with imminent bodily harm, and such acts or displays caused Thomas to have a reasonable apprehension that harmful or offensive contact with his person was imminent.

331.    The conduct of the Defendants as alleged herein was an excessive and unreasonable use of force against Thomas, and as such, an unlawful assault on him in violation of North Carolina Law.

332.    To the extent any force and or contact were necessary against Thomas, which necessity is expressly denied, it was the Defendants' own willful, wanton, reckless and deliberate misconduct in the handling of Thomas' situation that unreasonably and unnecessarily created the need for such force.

333.    The conduct of the Defendants was intentional, or alternatively, constituted gross negligence, and/or was committed with wanton and willful disregard to rights and safety of Thomas, with the knowledge and belief that injury to Thomas was certain to follow.

334.    At all times relevant to the allegations herein, the Defendants were acting in the course and scope of their duties as Lee County Sheriffs Deputies and their actions and conduct are therefore imputed to Lee County and the Lee County Sheriff's Department under the doctrine of *Respondeat Superior.*

335.    As a direct and proximate result of the Defendants' conduct, Thomas has suffered, and continues to suffer, injury in an amount greater than $10,000.00.

## TWENTY-FIRST CAUSE OF ACTION
### (Battery, Lee County, Lee County Sheriff's Department – Deputy Matthews, Deputy Babb, Deputy Holly, Deputy Estes, Deputy Gilstrap, Deputies John Doe 5 – 15 and Defendants yet to be identified - in their Individual and Official Capacities)

336.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

337.    The intentional conduct of the Deputies Matthews, Babb, Holly, Estes, Gilstrap, Deputies John Doe 5-15, and Defendants yet to be Identified (collectively the "Defendants"),

both during and after the unconstitutional seizure of Thomas' person, resulted in an intentional offensive and harmful touching of Thomas' person, without his consent, which contact actually caused Thomas physical pain and suffering, and as such constitutes a violation of North Carolina Law.

338.    The conduct of the Defendants as alleged herein was an excessive and unreasonable use of force against Thomas, and as such constitutes a battery in violation of North Carolina Law.

339.    The extent and nature of force used in the seizure of Thomas' person was patently unreasonable.  To the extent any force and/or contact were necessary against Thomas, which necessity is expressly denied, it was Defendants' own willful, wanton, reckless and deliberate misconduct in the handling of Thomas' situation that unreasonably and unnecessarily created the need for such force.

340.    The conduct of the Defendants was intentional, or alternatively constituted gross negligence, and/or was committed with wanton and willful disregard to rights and safety of Thomas, with the knowledge and belief that injury to Thomas was certain to follow.

341.    At all times relevant to the allegations herein, the Defendants were acting in the course and scope of their duties as Lee County Sheriffs Deputies and their actions and conduct are therefore imputed to Lee County and the Lee County Sheriff's Department under the doctrine of *Respondeat Superior*.

342.    As a direct and proximate result of the Defendants' conduct, Thomas has suffered, and continues to suffer injury at an amount in excess of $10,000.00.

## TWENTY-SECOND CAUSE OF ACTION
### (Invasion of Privacy, North Carolina Law - Lee County Sheriff's Department, Deputy Allen, and Defendants yet to be identified, in their Individual and Official Capacities)

343.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

344.     After Deputy Allen's blatant attempt to obtain incriminating evidence from Thomas was complete, Thomas was provided a room in which to change his clothes.   In changing his clothes, Thomas was entitled to privacy as he did so, and he had a reasonable expectation of privacy as he did so.

345.     The Lee County Sheriff's Department, Deputy Allen, and upon information and belief, Defendants yet to be identified, violated Thomas' privacy by surreptitiously video recording Thomas as he changed his clothes.  Said recording was absent any knowledge and/or consent of Thomas.

346.     The act of unlawfully surreptitiously video recording Thomas as he changed his clothes after being released from an unlawful detention, constituted an intrusion upon Thomas' seclusion, solitude and private affairs. Accordingly, Deputy Allen individually, and the Lee County Sheriff's Department as well as, upon information and belief, Defendants yet to be identified, committed an unlawful, unreasonable, and offensive invasion of Thomas' privacy in violation of North Carolina law.

347.     At all times relevant to the allegations herein, Deputy Allen, and Defendants yet to be identified, were acting in the course and scope of their duties as Lee County Sheriffs Deputies and/or employees.  Their actions and conduct are therefore imputed to Lee County and the Lee County Sheriff's Department under the doctrine of *Respondeat Superior*.

348.     As a direct and proximate result of the Defendants conduct, Thomas has suffered, and continues to suffer, injury in an amount to be determined at trial.

## TWENTY-THIRD CAUSE OF ACTION
**(Gross Negligence, North Carolina Law, Defendants: Lee County, Lee County Sheriff's Department, Deputy Matthews, Deputy Babb, Deputy Holly, Deputy Estes, Deputy Gilstrap, Deputies John Doe 5 – 15, and Defendants yet to be identified - in their Individual and Official Capacities)**

349.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

350.     The conduct of the Deputies Matthews, Babb, Holly, Estes, Gilstrap, Deputies John Doe 5-15 and Defendants yet to be identified (collectively the "Defendants") as alleged herein, both during and after the unconstitutional seizure of Thomas' person, was purposeful, and was with knowledge it constituted a breach of the Defendants' duty to honor and respect the rights and safety of Thomas.

351.     Furthermore, the actions of the Defendants were done needlessly, manifesting a conscious and reckless disregard of the rights and safety to Thomas.

352.     The conduct of the Defendants amounted to gross negligence in their performance of duties owed to Thomas as Law Enforcement Officers for Lee County.

353.     At all times relevant to the allegations herein, the Defendants were acting in the course and scope of their duties as Lee County Sheriffs Deputies and their actions and conduct are therefore imputed to Lee County and the Lee County Sheriff's Department under the doctrine of *Respondeat Superior*.

354.     As a direct and proximate result of the Defendants' conduct Thomas has suffered, and continues to suffer, injury in an amount to be determined at trial.

## TWENTY-FOURTH CAUSE OF ACTION
### (Negligence, North Carolina Law, Defendants: Lee County, Lee County Sheriff's Department)

355.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

356.    Lee County Sheriff's Department, and therefore Lee County, had a duty to exercise reasonable care in the training and/or supervision of its employees and/or agents in the proper use of force, use of tasers, and observance of individual constitutional rights.

357.    As alleged herein, Lee County Sheriff's Department and, therefore, Lee County, failed to exercise reasonable care in the training and/or supervision in the use of force and proper use of tasers and observance of individual constitutional rights.

358.    Such failure by Lee County Sheriff's Department, and therefore Lee County, constitutes negligence.

359.    As a direct and proximate result of Lee County Sheriff's Department and Lee County's conduct, Thomas has suffered, and continues to suffer, injury in an amount to be determined at trial.


## TWENTY-FIFTH CAUSE OF ACTION
### (False Imprisonment, North Carolina Law, Lee County Sheriff's Department and Individual Defendants – Deputy Matthews, Deputy Babb, Deputy Holley, Deputy Estes, Deputy Gilstrap, Deputies John Doe 5-15, and Defendants yet to be named - in their Individual and Official Capacities)

360.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

361.    Thomas was brutally beaten, intentionally restrained and intentionally confined, without justification, against his will and absent his consent, through physical force, bodily contact, physical restraint, and confinement for a period of nearly three days.

362. Deputy Matthews, Deputy Babb, Deputy Holley, Deputy Estes, Deputy Gilstrap, Deputies John Doe 5-15, Defendants yet to be Identified and by extension the Lee County Sheriff's Department (collectively the "Defendants"), intentionally and unlawfully detained Thomas against his will through the use of excessive force, bodily contact, physical restraint and confinement.

363. The conduct of the Defendants constituted a false imprisonment of Thomas.

364. Thomas has been, and continues to be, injured directly and proximately due to the conduct of the Defendants due to their false imprisonment of Thomas.

365. The Defendants are jointly and severally liable for all damage and damages directly and proximately resulting from their false imprisonment of Thomas including compensatory damage from each Defendant and punitive damages from each individual Defendant.

## TWENTY-SIXTH CAUSE OF ACTION
### (Violation N.C. Gen. Stat. § 15A-537, Sheriff Carter and Defendants yet to be Identified)

366. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

367. N.C. Gen. Stat. § 15A-537 provides in its entirety:

> (a) Following any authorization of release of any person in accordance with the provisions of this Article, any judicial official must effect the release of that person upon satisfying himself that the conditions of release have been met. In the absence of a judicial official, any law enforcement officer or custodial official having the person in custody must effect the release upon satisfying himself that the conditions of release have been met, but law enforcement and custodial agencies may administratively direct which officers or officials are authorized to effect release under this section. Satisfying oneself whether conditions of release are met includes determining if sureties are sufficiently solvent to meet the bond obligation, but no

judicial official, officer, or custodial official may be held civilly liable for actions taken in good faith under this section.

(b)     Upon release of the person in question, the person effecting release must file any bond, deposit, or mortgage and other papers pertaining to the release with the clerk of the court in which release was authorized.

(c)     For the limited purposes of this section, any law enforcement officer or custodial official may administer oaths to sureties and take other actions necessary in carrying out the duties imposed by this section. Any surety bond so taken is to be regarded in every respect as any other bail bond.

368.    While Thomas was still admitted to CCH, Thomas' father was told by Sheriff Carter that Thomas would not have his bond set.

369.    Prior to being discharged from CCH to be transferred to UNC, while heavily medicated and not lucid, Thomas made his initial appearance before Magistrate Ragsdale and his bail had in fact been set at $30,000.00 secured.  A fact which, upon information and belief, was known to Sheriff Carter.

370.    Further, Thomas was unaware he could post bond, and upon information and belief, Sheriff Carter in fact knew or should have known that Thomas was unaware that he could post bond.

371.    Upon information and belief, Sheriff Carter knew at the time he told Thomas' father that Thomas would not have his bond set, that Thomas' father was ready, willing, and able to post bail for Thomas.

372.    Sheriff Carter knew or should have known, at the time he talked to Thomas' father, that bail would in fact be set.

373.    Sheriff Carter knew or should have known, at the time Thomas was transferred to UNC from CCH that bail had in fact been set as detailed herein.

374. At the time Thomas was transferred from UNC to Central Prison he had been in custody for over two days and his bail had been set for over two days.

375. Sheriff Carter and Defendant's yet to be identified knew or should have known the conditions set for Thomas' bail upon his arrival to UNC and when Thomas was transferred to Central Prison.

376. At the time of Thomas' transfer to Central Prison, Sheriff Carter and Defendants yet to be identified knew that the conditions for Thomas' release as set by Magistrate Ragsdale would be met by Thomas' father.

377. Pursuant to N.C. Gen. Stat. § 15A-537(a) in the absence of Magistrate Ragsdale, and knowing the conditions of Thomas' release and that Thomas' father was ready, willing and able to post bail for Thomas, Sheriff Carter and/or Defendants yet to be identified, had a duty to accept said bail and effect Thomas' release and failed to do so.

378. Sheriff Carter's and the Defendants' yet to be identified failure to effect the release of Thomas, was willful, wanton, and in bad faith.

379. Sheriff Carter's and the Defendants' yet to be identified actions as alleged herein were intentionally indifferent to the rights of Thomas and as a direct and proximate result Thomas was unconstitutionally deprived of his liberty for at least two and a half days, subjected to unnecessary pain and suffering, and suffered injury as detailed herein.

380. Sheriff Carter, and the Defendants yet to be identified are individually liable for all injury caused proximately and directly by their conduct and refusal to ensure Thomas' constitutional rights. Said liability includes compensatory damage from each Defendant and punitive damages from each individual Defendant.

## TWENTY-SEVENTH CAUSE OF ACTION
### (Violation N.C. Gen. Stat. § 162-55, Defendants: Sheriff Carter in his official capacity as Lee County Sheriff, Defendants yet to be Identified, John Does 1-4, and Nurse Doe.)

381.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

382.    N.C. Gen. Stat. § 162-55 provides in relevant part: "if the keeper of a jail shall do, or cause to be done, any wrong or injury to the prisoners committed to his custody, contrary to law, he shall not only pay treble damages to the person injured, but shall be guilty of a Class I misdemeanor."

383.    Sheriff Carter in his capacity as Sheriff of Lee County directly, and through his appointed employees and deputies as Defendants yet to be identified, John Does 1 - 4, and Nurse Doe, are all jailers as contemplated by N.C. Gen. Stat. § 162-55.

384.    Sheriff Carter's transfer of responsibility for Thomas to John Does 1 - 4, and Nurse Doe, effectively make each of the forenamed individuals deputies.

385.    The shackling of Thomas to his hospital bed at CCH and UNC, and the denial of Thomas' constitutional rights and prescribed medical care, are consistent with official and/or de-facto programs and/or policies implemented by Sheriff Carter.

386.    The Defendants yet to be Identified, John Does 1 - 4, and Nurse Doe acted intentionally, wantonly, recklessly and carelessly, exhibited thoughtless disregard to the consequences of their actions and heedless indifference to the safety and/or rights of Thomas, directly and proximately causing injury to Thomas as detailed above.

387.    Sheriff Carter is liable for the conduct of the Defendants yet to be Identified, John Does 1 – 4, and Nurse Doe under the doctrine of *Respondeat Superior*.

388.    Sheriff Carter, the Defendants yet to be Identified, John Does 1 - 4, and Nurse Doe are jointly and severally liable for injury caused proximately and directly by their conduct and refusal to ensure Thomas' constitutional rights, and Thomas is entitled to recover treble damages for said injury.

### TWENTY-EIGHTH CAUSE OF ACTION
**(Violation N.C. Gen. Stat. § 15A-521 *et. Seq.*, Tracy Carter individually and in his official Capacity as Lee County Sheriff, Defendants yet to be Identified in their official capacities and individually)**

389.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

390.    N.C. Gen. Stat. § 15A-521(a) requires that any person held in custody who has not been released on bail to be committed by a written order to an appropriate detention facility. Among other things the order of commitment must designate the place of confinement.

391.    N.C. Gen. Stat. § 15A-521(c)(1) further requires that the order of commitment be delivered to a law enforcement officer who then must deliver the prisoner to the designated place of confinement.

392.    As alleged herein, Thomas made an initial appearance in front of Magistrate Ragsdale and Magistrate Ragsdale set Thomas' initial bond at $30,000.00 secured, directing that Thomas be held in the Lee County Jail until the conditions set for his release were met.

393.    After his surgery at UNC, rather than be allowed to post bond, or even informed that he could post bond, Thomas was transferred to Central Prison by the Lee County Sheriff's Department in direct violation of Magistrate Ragsdale's order.

394.    In direct violation of N.C. Gen. Stat. § 15A-521, Sheriff Carter, the Lee County Sheriff's Department, and Defendants yet to be Identified (collectively the "Defendants")

knowingly and willfully ignored Magistrate Ragsdale's order and transferred Thomas to Central prison.

395.    The Defendants acted intentionally, wantonly, recklessly and carelessly, and exhibited thoughtless disregard to the consequences of their actions and heedless indifference to the safety and/or rights of Thomas, thereby directly and proximately causing injury to Thomas as detailed herein.

396.    The Defendants are individually liable for all injury caused proximately and directly by their conduct and refusal to ensure Thomas' constitutional rights.  Said liability includes compensatory damage from each Defendant and punitive damages from each individual Defendant.


### TWENTY-NINTH CAUSE OF ACTION
**(Violation N.C. Gen. Stat. § 148-20, Defendants: Branker, John Does 1- 4, and Nurse Doe.)**

397.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

398.    N.C. Gen. Stat. § 148-20 provides in relevant part:

> It is unlawful for … any [ ] person having the care, custody, or control of any prisoner in this State to make or enforce any rule or regulation providing for the whipping, flogging, or administration of any similar corporal punishment of any prisoner, or to give any specific order for or cause to be administered or personally to administer or inflict any such corporal punishment.

399.    The permanent shackling of Thomas to his hospital bed while admitted to CCH and UNC hospitals, the denial of pain medication, and the forcing of Thomas to dispose of his medically prescribed brace to hold his jaw in place post surgery, were all forms of corporal punishment as contemplated by N.C. Gen. Stat. § 148-20.

400.     Defendant Branker, in his capacity as Administrator for Central Prison, indirectly and directly through his appointed employees, John Does 1- 4 and Nurse Doe, caused to be administered or his employees administered and/or inflicted corporal punishment upon Thomas as herein alleged.

401.     Upon information and belief, the shackling of Thomas to his hospital bed at UNC, and the denial of Thomas' constitutional rights and prescribed medical care, are consistent with official and/or de-facto programs and/or policies implemented by Branker.

402.     John Does 1 - 4 and Nurse Doe acted intentionally, wantonly, recklessly and carelessly, exhibited thoughtless disregard to the consequences of their actions and heedless indifference to the safety and/or rights of Thomas, directly and proximately causing injury to Thomas as detailed above.

403.     Branker is liable for the conduct of John Does 1 - 4 and Nurse Doe under the doctrine of *Respondeat Superior*.

404.     Branker, John Does 1 - 4, and Nurse Doe are jointly and severally liable for injury caused proximately and directly by their conduct and refusal to ensure Thomas' constitutional rights, and Thomas is entitled to recover compensatory and/or punitive damages from each in their individual capacitates for said injury.

## THIRTIETH CAUSE OF ACTION
**(Punitive Damages, Defendants: Deputy Matthews, Deputy Babb, Deputy Holley, Deputy Estes, Deputy Gilstrap, Deputies John Does 1-15, and Defendants yet to be named - in their Individual Capacities for Reckless and/or Callous Indifference to Thomas' Federally Protected Rights)**

405.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

406. The conduct of the Deputies Matthews, Babb, Holley, Estes, Gilstrap, John Does 1-15, and Defendants yet to be identified (collectively the "Defendants"), in their individual capacities, was reckless and in callous indifference to Thomas' federally protected rights.

407. The Defendants were acting under the color of state law and are sued in their individual capacities for punitive damages.

### THIRTY-FIRST CAUSE OF ACTION
**(Punitive Damages, Defendants: Deputy Matthews, Deputy Babb, Deputy Holley, Deputy Estes, Deputy Gilstrap, Deputies John Does 1-15, and Defendants yet to be named - in their Individual Capacities for Willful and Wanton Disregard to Thomas' Rights and Safety – North Carolina Law)**

408. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

409. The conduct of the Deputies Matthews, Babb, Holley, Estes, Gilstrap, John Does 1-15, and Defendants yet to be Identified (collectively the "Defendants") in their individual capacities, was willful, wanton and callous disregard to Thomas' rights and safety.

410. The Defendants were acting under the color of state law and are sued in their individual capacities for punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Steven Wayne Thomas respectfully prays the Court as follows:

1. Judgment against individual Defendants for compensatory damages in an amount greater than $1,000,000.00;

2. Judgment against Lee County, Lee County Defendants, for compensatory damages in an amount greater than $1,000,000.00;

3. Judgment against the Lee County Sheriff's Department for compensatory damages in an amount greater than $1,000,000.00;

4. Punitive damages against each Defendant to the extent allowed by law;

5.      An award of the costs of this action, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

6.      Treble damages against Sheriff Carter, in his official capacity as Lee County Sheriff, Defendants yet to be Identified, John Does 1-4, and Nurse Doe, pursuant to N.C. Gen. Stat. § 162-55;

7.      A trial by jury on all issues so triable; and

8.      Any such other and further relief this Court may deem just and proper.


Respectfully submitted this 9th day of February, 2010.

SHANAHAN LAW GROUP, PLLC

By:      _____/s/ Kieran J. Shanahan_____
         Kieran J. Shanahan, NCSB # 13329
         Steven K. McCallister, NCSB #25332
         Michael J. Denning, NCSB #36715
         128 E. Hargett Street, 3rd Floor
         Raleigh, North Carolina 27601
         Telephone: (919) 856-9494
         Facsimile: (919) 856-9499