IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CV-52-BO

| | |
|---|---|
| STEVEN WAYNE THOMAS,<br>Plaintiff, | )<br>)<br>) |
| v. | )    O R D E R<br>) |
| R.V. HOLLY, *et al.*,<br>Defendants. | )<br>)<br>) |

This matter is before the Court Defendant Mora's motion to dismiss [DE 100] and Defendants Carter, Matthews, Babb, Holly, Estes, Gilstrap, Smith, Allen, Marcum, Melton, and Lloyd's motion for summary judgment [DE 102]. A hearing was held before the undersigned on July 18, 2012, at Raleigh, North Carolina and the motions are ripe for ruling. For the reasons discussed below, Defendant Mora's motion to dismiss is granted and Defendants' motion for summary judgment is denied.[1]

## BACKGROUND

Plaintiff Steven Wayne Thomas alleges that on April 27, 2009, he became disoriented as a result of exposure to chemicals that he was applying to his tobacco fields in Lee County, North Carolina. While en route to receive medical care, the police were called in response to Plaintiff

---

[1] Plaintiff states in his opposition to summary judgment that the motion should be denied as to Plaintiff's first, third, fourth, fifth, seventh, eighth, fourteenth, fifteenth, twentieth, twenty-first, thirtieth, and thirty-first causes of action and that all remaining causes of action have either been dismissed or are abandoned [DE 105 at 30]. Accordingly, only the above-listed causes of action survive the motion for summary judgment and remain for trial. All of Plaintiff's abandoned causes of action, including, *inter alia*, those brought pursuant to the North Carolina Constitution, those alleging an official policy, practice, or custom of the Lee County Sheriff's Department, those brought for inadequate training and supervision, those brought against the NC Department of Corrections Doe Defendants, and those for negligence, gross negligence, false imprisonment, and invasion of privacy are DISMISSED.

causing damage to a fence located on private property. Plaintiff alleges that the several Lee County deputy sheriffs who responded to the call used excessive force causing Plaintiff serious injuries.

Plaintiff has proffered evidence to support the following description of events regarding his excessive force claims. Plaintiff approached Defendant Matthews[2], the deputy who responded to the property damage dispatch, with his hands outstretched asking for help. Gross Depo. at 94-95. When Plaintiff failed to immediately comply with Deputy Matthews' request to back away, but was attempting to do so, Deputy Matthews tased Plaintiff a total of three times. Gross Depo. at 99; Matthews Depo. at 168. Plaintiff then grabbed the Taser wires and twisted them off; Deputy Matthews then sprayed Plaintiff in the face with pepper spray. Thomas Depo. at 203, 208. Plaintiff ran away from the scene but shortly returned, at which time his friend tackled him and assisted Deputy Matthews by placing a handcuff on Plaintiff's right arm. Gross Depo. at 122-127.

Once Plaintiff was on the ground in a prone position, other deputies arrived. Deputy Matthews remained positioned on Plaintiff's back and Plaintiff's friend had either removed himself or was told to move by Defendant Gilstrap upon his arrival. Gross Depo. at 128; Gilstrap Depo. at 123. While Plaintiff was still on the ground in a prone position with Deputy Matthews on his back, Deputy Gilstrap deployed his Taser on Plaintiff and tased him at least three times. Shearer Depo. at 31; Gilstrap Depo. at 143-43, 172. Deputy Gilstrap then positioned himself on Plaintiff's back. Gilstrap Depo. at 181.

Defendants Babb and Estes arrived next, whereupon Deputy Babb dropped to his knees and punched Plaintiff in the face three or four times in rapid succession. Shearer Depo. at 38-40.

---

[2]Defendants deputy sheriffs will be referred to herein either as Defendant or Deputy.

2

Deputy Estes then struck Plaintiff about the head and face with his knee multiple times. Gross Depo. at 140-41. Deputy Babb then tased Plaintiff at least three times. Babb Depo. at 193-194. Plaintiff was unarmed during the entirety of the incident, and has proffered evidence that after he was lying prone on the ground he did not try to punch, kick, or charge any of the deputies at the scene. Shearer Depo. at 26.

Plaintiff has proffered further evidence that he was tased multiple times after he was placed in handcuffs and had been fully subdued [DE 105-12]. Plaintiff suffered several injuries as a result of the incident, including a broken jaw, and was immediately transported to the hospital for treatment following his arrest. Pathan Depo. at 26-27; Thomas Depo. at 287.

Plaintiff has voluntarily dismissed from this action the North Carolina Department of Correction, Gerald Branker, Lee County, and the Lee County Sheriff's Department. The Court granted Sheriff Carter's partial motion to dismiss and the several deputy sheriff's partial motion to dismiss by order entered August 4, 2010. Defendant Mora now moves to dismiss this action against him pursuant to Rules 12(b)(4), 12(b)(5), and 4 of the Federal Rules of Civil Procedure. Plaintiff did not oppose Defendant Mora's motion to dismiss for failure to make service, and, as there is no record before the Court that would indicate that Defendant Mora's motion should not be granted, Defendant Mora is hereby dismissed from this action due to Plaintiff's failure to perfect service within the time provided by Rule 4. Fed. R. Civ. P. 4(m). The several remaining named Defendants now move for summary judgment as to all claims.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

3

56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. LibertyLobby, Inc.*, 477 U.S. 242, 252 (1986).

Plaintiff's action pursuant to 42 U.S.C. § 1983 claims that the moving Defendants violated his Fourth Amendment rights by using unreasonable and excessive force to effect his arrest on April 27, 2009. The moving Defendants argue that Plaintiff's excessive force claim fails as a matter of law because they are entitled to qualified immunity. Defendants further contend that Plaintiff's state law claims fail and are otherwise barred by the doctrine of public officer's immunity.

## *Qualified Immunity*

The privilege of qualified immunity protects government officials from liability so long as they could reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court recognized a two-step procedure for determining whether qualified immunity applies that "asks first whether a

4

constitutional violation occurred and second whether the right violated was clearly established."
*Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). Judges are permitted to exercise their discretion, however, in regard to which of the two prongs should be addressed first in light of the facts and circumstances of the particular case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

I. Constitutional Violation

Claims that law enforcement officers have used excessive force during an arrest are properly analyzed under the Fourth Amendment and its standard for reasonableness. *Graham v. Connor*, 490 U.S. 386, 395 (1989). In order to determine whether force in a particular instance is reasonable, "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" is necessary. *Id.* at 396 (quotation and citation omitted). Reasonableness in this context is an objective inquiry and "must be judged from the perspective of a reasonable officer on the scene." *Id.* at 396-97 (citations omitted). Courts should consider the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Id.* at 396 (citation omitted).

The Court first considers each of the *Graham* factors, beginning with the severity of the crime at issue. *Graham*, 490 U.S. at 396. The crime for which the Lee County sheriff's deputies were initially summoned on April 27, 2009, was willful and wanton injury to real property, a misdemeanor offense under North Carolina law. N.C. Gen. Stat. § 14-127. While criminal activity was taking place, the severity of that criminal activity was minor. Indeed, Deputy Matthews has stated that when he arrived at the scene, after having received contact from his

5

dispatch and approaching at a normal rate of speed and without use of his sirens, Plaintiff and his friend were standing calmly in a grassy area and neither was armed. Matthews Depo. at 125-25; 139. In cases in which a defendant has committed only a minor offense, the Fourth Circuit has found that first *Graham* factor weighs in the plaintiff's favor. *Jones v. Buchanan*, 325 F.3d 520, 528 (4th Cir. 2003). As the crime for which a deputy sheriff was dispatched were minor, and as there were no other factors when Deputy Matthews arrived at the scene to suggest otherwise, the first *Graham* factor weighs in favor of Plaintiff.

The second *Graham* factor, whether the suspect posed an immediate threat to the safety of officers or others, presents a closer question. *Graham*, 490 U.S. at 396. During this incident, Plaintiff was suffering from the effects of a condition called cholinesterase inhibition caused by his exposure to certain chemicals. The signs of a "cholinergic storm" include sweating, blurred vision, agitation, cognitive impairment, anxiety, and rage. Slotkin Dep. at 102. Viewing the facts in the light most favorable to Plaintiff, however, though Plaintiff's earlier behavior may have been erratic, Plaintiff's initial approach of Deputy Matthews was with his hands in the air asking for help. Deputy Matthews deployed his Taser on Plaintiff *after* Plaintiff had begun to attempt to comply with Deputy Matthews' instructions and proceeded to tase him two more times while he was on the ground and while Plaintiff begged not to be tased again. Matthews Depo. at 168; 183.

In regard to the other deputies at the scene, those officers arrived when Plaintiff was already on the ground in a prone position, with one arm in handcuffs and one or two deputies on his back. Defendants' expert opined that there is no evidence that any of the deputies involved faced an imminent threat of death or serious injury during this incident. Combs Depo. at 222. Accordingly, the Court finds that, in viewing the facts in the light most favorable to Plaintiff, the

6

second *Graham* factor weighs in his favor.

The Court next considers whether Plaintiff resisted or attempted to evade arrest. *Graham*, 460 U.S. at 396. At the outset, the Court notes that the first Taser deployments were conducted before Deputy Matthews gave Plaintiff any indication that he was under arrest. Matthews Depo. at 139. Further, Plaintiff's facts support that though he may have provided minimal resistance to the additional deputies who arrived, Plaintiff remained in a prone position on the ground with one hand in a handcuff while receiving additional tasing as well as knee strikes and punches to the head and neck area. One witness has stated that Plaintiff appeared to be squirming, but was not trying to fight the deputies. Shearer Depo. at 26. The Court finds that, in this instance, any minimal resistance by Plaintiff in the face of continued force by the deputies does not cause this third *Graham* factor to weigh in favor of Defendants. *See Jones*, 325 F.3d at 530 (finding that where a suspect is not under arrest at the time of force the third *Graham* factor weighs in favor of the plaintiff, as well as discussing resistance given following application of force).

Finally, the Court considers the nature and extent of Plaintiff's injuries. *See Jones*, 325 F.3d at 530 (after considering the three *Graham* factors additionally considering the extent of the injuries caused to the plaintiff). Plaintiff maintains that he suffered injuries including a broken jaw, dental trauma, blunt force trauma, and Taser wounds as a result of Defendants' excessive force. Plaintiff's injuries required immediate hospitalization and surgery. The Court finds that this level of injury is not consistent with cases in which other courts have found that no excessive force was used, and that, accordingly, this final factor also weighs in favor of Plaintiff. *See e.g. Brown v. Gilmore*, 278 F.3d 362, 369 (finding no excessive force where Plaintiff made no allegations of injuries of any magnitude).

7

Even assuming, *arguendo*, that some force on behalf of Defendants was justifiable, the Court holds that, after considering the totality of these circumstances and the facts in the light most favorable to Plaintiff, Plaintiff has shown that the moving Defendants' actions were not objectively reasonable.[3] Accordingly, as Plaintiff has made the requisite showing that Defendants violated his Fourth Amendment rights, the Court now considers the second prong of the qualified immunity analysis.

## II. Violation of a Clearly Established Right

This prong of the analysis requires the Court to decide if the constitutional violation was of a clearly established right and focuses on the objective legal reasonableness of the official's acts. *Henry*, 652 F.3d at 534 (quotations and citations omitted). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, __ U.S. __; 132 St.Ct. 2088, 2093 (2012) (quotation and citation omitted).

Qualified immunity does not, however, fail to protect actions *only if* the very actions have been previously held unlawful; qualified immunity may not apply if the officials have fair warning that their actions are unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002) (quotation and citation omitted). This Court may consider the decisions of the Supreme Court, the Fourth Circuit, and the North Carolina Supreme Court in determining whether a right was clearly established. *Lefemine v. Wideman*, 672 F.3d 292, 298 (4th Cir. 2012) (quotation and citation omitted).

---

[3] Of course, jurors will not consider the facts in the light most favorable to Plaintiff, but if they credit Plaintiff's evidence it would not be improper for them to find that Defendants violated Plaintiff's Fourth Amendment rights. *Jones*, 325 F.3d at 531.

8

It is constitutional bedrock that the Fourth Amendment prohibits individuals from unreasonable searches seizures. U.S. CONST. amend. IV. Furthermore, in April 2009 it would have been clear to a reasonable officer that at least some of the conduct engaged in by the moving Defendants was unlawful.

In *Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994), the Fourth Circuit held that an officer who chased a fleeing suspect of a minor crime and threw his weight against the leg of the suspect, seriously injuring him, was not entitled to qualified immunity, even though the suspect may have resisted after he was attacked. In *Kane v. Hargis*, 987 F.2d 1005 (4th Cir. 2005), the Fourth Circuit found that an officer who pinned a suspect who had previously gone "berserk" and attempted to flee was not entitled to qualified immunity for force used after the suspect had been pinned to the ground. Furthermore, "[c]ourts have consistently applied the *Graham* holding and have consistently held that officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity." *Jones*, 325 F.3d at 532.

Here, Defendant Matthews was dispatched to the scene of the incident to respond to a report of a misdemeanor offense, and Plaintiff contends that he asked Defendant Matthews for help and was attempting to comply with the deputy's commands when he was tased for the first time. Plaintiff has also proffered evidence that he was he was on the ground in a prone position with one or two deputies holding him down when other deputies proceeded to tase him multiple times as well as punch and knee him in the head and face. In light of prior Fourth Circuit case law finding qualified immunity inapplicable under less egregious circumstances, the Court finds that Defendants had fair notice that their conduct would violate a clearly established right.

Plaintiff has also proffered some evidence that Defendants deployed a Taser on him *after* he was handcuffed. There is little question that the deputies in April 2009 had fair notice that deploying a Taser against a handcuffed and subdued suspect would violate clearly established law. *See Bailey v. Kennedy*, 349 F.3d 731, 745 (4th Cir. 2003) (listing cases in which the Fourth Circuit denied qualified immunity when force was used after a suspect was secured). Accordingly, the Court holds that the right violated by Defendants was clearly established on April 27, 2009, and, viewing the facts in the record in the light most favorable to Plaintiff, the Court cannot therefore conclude that Defendants are entitled to qualified immunity as a matter of law.

*Bystander Liability*

Plaintiff also claims that Defendants Carter, Melton, Smith, Marcum, Allen, and Lloyd failed to intervene to prevent the alleged violation of Plaintiff's constitutional rights. An officer may be liable under § 1983 on a theory of bystander liability if he or she "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty, Md.*, 302 F.3d 188, 204 (4th Cir. 2002).

As the Court has held that at this stage of the proceedings a finding of qualified immunity as a matter of law is inappropriate, it further finds that there remains a question of fact as to whether these Defendants would be liable under a theory of bystander liability. In viewing the facts in the light most favorable to Plaintiff, as is required here, and in light of the foregoing qualified immunity analysis, the Court concludes that there is sufficient evidence such that a reasonable juror could conclude that these Defendants knew that a constitutional violation was

occurring when Plaintiff was being kneed, punched, and repeatedly tased both before and possibly after he was secured in handcuffs, that they had a reasonable opportunity to prevent the violations, and that they chose in those moments not to act.

*State Law Claims & Public Officer Immunity*

Finally, the Court finds that Defendants are not entitled to summary judgment on Plaintiff's remaining state law tort claims for assault and battery. North Carolina law recognizes that an assault and battery by a law enforcement office may provide the basis for a civil action for damages so long as the plaintiff can show that the force used was excessive under the circumstances. *Glenn-Robinson v. Acker*, 140 N.C. App. 606, 625 (2000) (citation omitted). In excessive force cases such as this, a "parallel state law claim of assault and battery is subsumed within the federal excessive force claim and so goes forward as well" if the federal claim survives summary judgment. *Rowland*, 41 F.3d at 174. As the Court has found that Plaintiff's federal excessive force claims may proceed, Plaintiff's state law assault and battery claims may also proceed.

Furthermore, North Carolina's doctrine of public officer's immunity does not shield these Defendants from liability for the state law claims. The doctrine of public officer's immunity provides that "[a]s long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability." *Smith v. State*, 289 N.C. 303, 331 (1976).

Assault and battery are intentional torts under North Carolina law, *see Ormond v. Crampton*, 16 N.C. App. 88, 94 (1972), and public officer's immunity is not available to shield

11

liability arising from an intentional tort. *Bradley v. Ramsey,* 329 F. Supp.2d 617, 626 (W.D.N.C.2004); *see also Russ v. Causey,* 732 F. Supp.2d 589, 612 (E.D.N.C. 2010); *Wells v. N.C. Dep't of Corr.,* 152 N.C.App. 307, 320 (2002). Because public officer's immunity is not available to shield Defendants from liability for Plaintiff's remaining state law claims, their motion for summary judgment as to these claims is denied.

## CONCLUSION

Accordingly, for the reasons discussed above, Defendant Mora's motion to dismiss [DE 100] is GRANTED and Defendants' motion for summary judgment [DE 102] is DENIED. Plaintiff's abandoned claims are hereby DISMISSED, and Plaintiff's motion to supplement response in opposition [DE 110] is GRANTED.

SO ORDERED, this 2 day of August, 2012.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE